**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INLAND EMPIRE MEAT COMPANY, Respondent.**

**No. 78–2401.**

United States Court of Appeals, Ninth Circuit.

Nov. 14, 1979.

As Amended Jan. 24, 1980.

James Y. Callear, (argued), NLRB, Washington, D. C., for petitioner.

David G. Moore, Reid, Babbage & Coil, Riverside, Cal., on brief for respondent.

Before SNEED and TANG, Circuit Judges, and PFAELZER *, District Judge.

TANG, Circuit Judge.

The National Labor Relations Board (Board) seeks enforcement of its order directing Inland Empire Meat Co. to cease discouraging union activity through threats or the discharge of employees and to compensate one employee for lost wages due to wrongful discharge.  Inland asserts that the Board was time barred from complaining about certain activities occurring in November and December 1976 and further argues that there was insubstantial evidence to support the Board's findings.

*DISCUSSION*:

(1) Statute of Limitations Issue

On May 3, 1977, Harold Finnigan, then a former employee of Inland, filed an

---

* Honorable Mariana Pfaelzer, United States District Judge for the Central District of California, sitting by designation.

unfair labor practice charge alleging that Inland had unlawfully terminated his employment on November 15, 1976 because of his union activities. The charge further alleged that the company had violated Section 7 of the National Labor Relations Act (Act) by "other acts and conduct". Shortly thereafter, a complaint was issued charging that Inland had violated the Act by terminating Finnigan. The complaint was amended on August 17, 1977, and specifically alleged additional unlawful acts by the company during November and December 1976 as to other employees. These additional allegations were in paragraphs 6 and 7 of the amended complaint which the company argues violated the six month statute of limitations in Section 10(b) of the Act. That section provides that no unfair labor practice complaint can be issued unless a charge is first filed with the Board within six months of the occurrence of the unfair labor practice.

The company notes that the only charge filed with the Board was Finnigan's charge of May 3, 1977 which, admittedly, was filed within 6 months of the November-December 1976 incidents. However, the company argues that Finnigan's charge only refers to his firing on November 15, 1976 and makes no references to any other unfair labor practices in November and December 1976. Hence, they urge that no charge was filed with respect to the November and December 1976 instances alleged in paragraphs 6 and 7 concerning other company activities. The Board urges that Finnigan's charge did refer to these instances because the charge generally alleged that Inland had violated the Section 7 rights of "its employees" by "other acts and conduct." At issue is whether this general allegation of "other acts and conduct" in Finnigan's charge of May 3, 1977 is sufficient to authorize the Board to complain of the November-December 1976 incidents as alleged in amended paragraphs 6 and 7.

Inland relies on cases which are not on point factually. In both *NLRB v. I. B. S. Mfg. Co.,* 210 F.2d 634 (5th Cir. 1951) and *Joanna Cotton Mills v. NLRB,* 176 F.2d 749 (4th Cir. 1949) there were two charges: an original charge filed within six months and an amended charge not filed within six months. The courts held that the untimely amended charges did not relate back to the original charge since they contained entirely new and different unfair labor practices. In *Knickerbocker Mfg. Co. v. NLRB,* 109 NLRB 1195 (1954), none of the charges were filed within six months of the unfair labor practice, and were thus held untimely under Section 10(b). The instant case does not involve an untimely charge but merely whether the Finnigan charge of May 3, 1976 is sufficient.

The Board, however, cites one case closely on point. In *NLRB v. Central Pwr. & Light Co.,* 425 F.2d 1318 (5th Cir. 1970), the original charge alleged a discriminatory discharge of an employee and stated the company had violated section 7 rights "by other acts and conduct." An amended complaint contained a specific allegation that the company had an illegal no-solicitation rule. At issue was whether the original charge was legally sufficient to include reference to the no-solicitation rule. The court provided these guidelines:

> The charge is thus not intended to be a detailed pleading or to specify the issues ultimately to be raised before the Trial Examiner; the Board's complaint serves that function. All that the requirement is really concerned about is that the instigation of an investigation and complaint proceed under a formal charge made by the party aggrieved and not from the Board's own initiative.[2] Accordingly,

[2] "[T]he charge is not a formal pleading, and its function is not to give notice to the respondent of the exact nature of the charges against him. * * * This is the function of the complaint." *Texas Industries v. NLRB,* 5th Cir. 1964, 336 F.2d 128.

> general allegations such as that the employer "by other acts and conduct * * interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in section 7 of the Act," as the charge here alleged, are legally sufficient to cause inclusion of other acts if they are sufficiently related to the specific acts alleged. And sufficient relation has generally been found between acts that are part of the same course of

conduct, such as a single campaign against a union. (citations omitted.)

*Id.* at 1320.

The court concluded that the charge had authorized the Board to complain of the no-solicitation rule because "the events complained of were all part of the same alleged anti-union campaign, were close together in time, and were clearly covered by the general language of the formal charge . . ." *Id.* These identical reasons apply in the instant case. The November-December 1976 employee instances were close in time to the November 15, 1976 firing of Finnigan, all were part of the same anti-union campaign, and, furthermore, were covered by the general language (i. e., "other acts and conduct") of Finnigan's charge. As stated in *NLRB v. Central Power,* the relationship between the charge's general language and the complaint's specific allegations "need be close enough only to negate the possibility that the Board is proceeding on its own initiative rather than pursuant to a charge." *Id.* at 1321, n.3.

(2) The Substantial Evidence Issues

Inland argues there was insubstantial evidence that Finnigan's discharge was motivated by anti-union considerations in violation of Section 8(a)(1) and 8(a)(3) of the Act. The company presents numerous reasons for discharging Finnigan. It claims that Finnigan either quit or was discharged because he violated company grooming policies; "smart-mouthed" a supervisor; failed to return a check to the company on the date of receipt and on one occasion picked up a wrong product while driving a company truck.

■ While there may have been a lawful cause for discharge, this is no defense if the discharge was improperly motivated. "In determining [an employer's] motivation, the Board 'may rely on circumstantial as well as direct evidence and its inference and finding must prevail where it is reasonable and supported by substantial evidence on the record considered as a whole.'" *Folkins v. NLRB,* 500 F.2d 52, 53 (9th Cir. 1974). Here the evidence of improper motivation was considerable. Finnigan was the shop steward. He was told by Pat Kaney on the day he was discharged that the company was getting him out and the union was next. He had earlier been told the company was going to start at the top and "do a little clean up . . ." Although Finnigan did report to work with long hair and a beard on November 15, 1976, in violation of company policy, the Administrative Law Judge credited the testimony of other employees that they had seen other employees in violation of company grooming standards who had not been reprimanded. Likewise, the ALJ credited testimony that other specific employees had not returned company checks on time and had not made correct pick-ups, yet were not reprimanded.

■ Also, the ALJ credited Finnigan's version that he did not quit on November 15, 1976, but was discharged. Inland argues that the testimony of the Kaneys who own and run the company should have been credited over the testimony of Finnigan. This court only overturns credibility determinations if a clear preponderance of the evidence shows they are incorrect. *NLRB v. Western Clinical Laboratory, Inc.,* 571 F.2d 457, 459 (9th Cir. 1978). Inland points to no such evidence. There is ample evidence of specific anti-union animus to show that Finnigan's discharge was in violation of the Act.

■ Inland also argues that there was insubstantial evidence to support the Board's finding that Inland attempted to discourage union activities through threats and promises to various employees, in violation of section 8(a)(1) of the Act. The argument is without merit. The facts as explained in the decision of the ALJ present substantial evidence of threats and promises made by the company to the employees aimed directly at discouraging union activity.

Accordingly, the Board's petition for enforcement of its order is granted.