**LIPPINCOTT INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 80-7476, 80-7573.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1981.

Decided Nov. 9, 1981.

William R. Squires, III, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for petitioner.

Paul J. Spielberg, N. L. R. B., Washington, D. C., argued, for respondent; Elliott Moore, N. L. R. B., Washington, D. C., on brief.

Before WRIGHT and ANDERSON, Circuit Judges, and THOMPSON,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Lippincott Industries, Inc. (Lippincott) petitions for review of a decision of the National Labor Relations Board (Board), 251 NLRB No. 34 (1980). The Board cross-applies for enforcement of its order.

The Administrative Law Judge (ALJ) concluded that Lippincott violated Section 8(a)(1) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), by unlawfully interrogating three employees during the

---

* The Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

union organizational campaign. The ALJ further held that Lippincott violated Sections 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3), by discharging one of those employees three hours before the representation election because of her known pro-union sentiment, and because her discharge would have a chilling effect on the other employees who would be voting in the election. The Board affirmed the ALJ's findings and conclusions. We enforce the Board's order.

## EMPLOYEE INTERROGATIONS

■ Interrogation of employees is an unfair labor practice when, under all the circumstances, the interrogation reasonably tends to restrain or interfere with the employees in the exercise of their protected rights. *Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1080 (9th Cir. 1977). The Board's determination on this issue must be upheld if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e); *NLRB v. International Medication Systems, Ltd.*, 640 F.2d 1110, 1112 (9th Cir. 1981).

■ The evidence of record sufficiently supports the Board's ruling that employee Peterson was subjected to interrogation(s) having a reasonable tendency to restrain or interfere with the exercise of protected rights, and Lippincott does not seriously contend otherwise. Rather, Lippincott challenges the ALJ's crediting of Peterson's testimony over the testimony of two of its supervisors. We may not reject the ALJ's credibility determinations unless a clear preponderance of the evidence shows they are incorrect. *NLRB v. Carilli*, 648 F.2d 1206, 1211 (9th Cir. 1981); *NLRB v. Inland Empire Meat Co.*, 611 F.2d 1235, 1238 (9th Cir. 1980). The record in this case does not.

■ The unlawful interrogation of Peterson justifies the Board's order to cease and desist from such conduct. Accordingly, it is unnecessary for us to address the interrogations of former employees Carter and Hartman.

## EMPLOYEE DISCHARGE

The Board concluded, in agreement with the ALJ, that Peterson was discharged because of her known pro-union sentiment and because her discharge would have a chilling effect on the other employees who would be voting in the representation election a few hours later. The Board found that the legitimate business reasons advanced by Lippincott were contrived to provide an excuse for the discharge.

The remedial order respecting this violation must be enforced if the Board correctly applied the law and if its findings of fact are supported by substantial evidence on the record viewed as a whole. *NLRB v. Nevis Industries, Inc.*, 647 F.2d 905, 908 (9th Cir. 1981). Lippincott challenges the order on both counts.

We have carefully studied the parties' contentions regarding the applicable legal standard for determining whether a discharge is violative of the Act. The Board has characterized this as a "pretext" case. Lippincott describes it as a "mixed motive" case. We think that in terms of the proper legal standard to be applied, the difference between these two types of cases is of little importance.

Undoubtedly, the language in some of the cases has suggested a distinction. *Compare, e. g., Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1083 (9th Cir. 1977) (". . . the existence of a justifiable ground for discharge will not prevent such discharge from being an unfair labor practice if partially motivated by the employee's protected activity; a business reason cannot be used as a pretext for a discriminatory firing.") with *Western Exterminator Co. v. NLRB*, 565 F.2d 1114, 1118 (9th Cir. 1977) (". . . where a discharge is motivated by both a legitimate business consideration and protected union activity, 'the test is whether the business reason or the protected union activity is the moving cause behind the discharge.' "). The perceived distinction, however, is more semantical than substantive. In either instance, the employer has asserted justifiable, legitimate business reasons for the discharge. The difference is

that in a pretext case the employer's reasons are discredited or otherwise rejected, leaving only the impermissible reason, while in a mixed motive case the relative causative force of the employer's reasons is compared against the impermissible reason to determine whether the latter is the moving cause behind the discharge. Therefore, the primary distinction between the two cases rests upon the differing weight that is attributed to the employer's explanation when examining the motivations behind a discharge. Of course, this determination is made *after* the evidence is presented.

■ The artificial distinction existing between these two classes of cases was eroded in *Ad Art, Inc. v. NLRB*, 645 F.2d 669, 678 (9th Cir. 1980), where this court stated that, "[w]hen a discharge is *conceivably motivated* both by legitimate business considerations and protected union activity, the test is whether the business reason or the protected union activity is the moving cause behind the discharge." (emphasis added). Many of our more recent decisions have stated the test without reference to the employer's asserted legitimate reasons. *See, e. g., NLRB v. Anchorage Times Publishing Co.*, 637 F.2d 1359, 1366–67 (9th Cir. 1981); *NLRB v. Adams Delivery Service, Inc.*, 623 F.2d 96, 99 (9th Cir. 1980); *Stephenson v. NLRB*, 614 F.2d 1210, 1213 (9th Cir. 1980). Thus, the test is properly focused on the employer's impermissible motivation to determine whether anti-union animus was the moving cause, or but for cause, behind the decision to discharge an employee. The test so structured gives full recognition to the well accepted maxim that "[a]n employer may discharge an employee for good cause, bad cause, or no cause at all, without violating § 8(a)(3), as long as his motivation is not antiunion discrimination and the discharge does not punish activities protected by the Act." *L'Eggs Products, Inc. v. NLRB*, 619 F.2d 1337, 1341 (9th Cir. 1980).

We note in passing that the Board's decision in *Wright Line, Inc.*, 251 NLRB No. 150, 105 LRRM 1169 (1980), while changing the procedural requirements, nonetheless applies a test designed to identify whether protected union activity was the moving cause behind the discharge. The rule announced in *Wright Line* has recently been accepted by this court. *NLRB v. Nevis Industries, Inc.*, 647 F.2d 905, 909 (9th Cir. 1981). The *Wright Line* decision was rendered after the Board's decision in the instant case and will not be applied here. We mention it only to illustrate the consistent development of this area of law.

■ We must now determine whether the Board properly applied the law as described above. Lippincott directs us to the ALJ's decision wherein he sets forth the guiding rule as follows: "... a discharge *motivated in part* by an employee's exercise of section 7 rights is a violation even though another valid cause may also be present." (emphasis added). We agree with Lippincott that this statement of the test is incorrect. *Stephenson v. NLRB*, 614 F.2d 1210, 1213 (9th Cir. 1980). However, it is the Board's, not the ALJ's, application of the law that we review.

■ Nevertheless, Lippincott contends that the Board applied the "in part" test described by the ALJ. It relies on footnote 4 of the Board's decision wherein it is stated that member Penello found it unnecessary to rely on the "in part" test referred to by the ALJ. Lippincott argues that by logical implication, the other two members did rely on the improper test. We disagree. The Board did not explicitly state a test, and whatever contrary inference can be drawn from footnote 4 is dispelled by the unequivocal express language in the body of the decision. The Board concluded that Peterson was discharged *because* of her involvement with the union and *because* of the chilling effect that discharge would have on other employees. Lippincott's explanation was found "implausible" and its reasons "contrived." These expressions comport with the proper standard discussed above. We are convinced that the Board properly applied the law.

The only remaining question is whether the Board's findings are supported by substantial evidence on the record viewed as a

whole. The Board may rely on circumstantial as well as direct evidence in determining an employer's motivation, *NLRB v. Inland Empire Meat Co.*, 611 F.2d 1235, 1238 (9th Cir. 1979), and we must be mindful that the determination of motive is particularly within the purview of the NLRB. *Pay'n Save Corp. v. NLRB*, 641 F.2d 697, 702 (9th Cir. 1981).

We have reviewed the entire record and find that a very close question is presented. Perhaps we would have reached a different conclusion had the evidence been presented to us *de novo*, but we are without power to substitute our view for the Board's choice between conflicting views. *Ad Art, Inc. v. NLRB*, 645 F.2d 669, 679 (9th Cir. 1980). The Board's inferences and findings are reasonable and supported by substantial evidence.

Lippincott's petition for review is denied. We enforce the Board's order.