**BEHRING INTERNATIONAL, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 81–1937.**

United States Court of Appeals, Third Circuit.

Argued Feb. 2, 1982.

Decided April 7, 1982.

As Amended May 20, 1982.

Robert W. Delventhal (argued), Brian J. McMahon, Crummy, Del Deo, Dolan & Purcell, Newark, N. J., for petitioner.

Bernard P. Jeweler (argued), William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., for respondent.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

One of the most persistent sources of labor litigation is the controversy that arises when an employee's discharge is based on dual motives—one being a legitimate business consideration and the other antiunion animus. In an effort to resolve the recurring controversy over its approach to this problem, the National Labor Relations Board adopted a rule which permits a finding of a violation if the employee would not have been discharged but for his union activity. *Wright Line, a Division of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980). As part of its rule, the Board shifts the burden of proof on this issue onto the employer after the General Counsel has established a *prima facie* case. We conclude that the Board's causation test is right, but that the procedural aspect is wrong because it runs afoul of statutory provisions on the burden of proof. Since the Board misallocated the burden in this case, we remand for further consideration.

On March 13, 1977, Teamsters Local No. 478 began an organizing campaign at a warehouse operated by Behring International in Edison, New Jersey. A majority of the warehouse employees voted against the union in the election held on April 25, and no objections were filed. About ten days after the election, however, three employees were laid off, followed by five more on June 3. Meanwhile, on May 26, Behring subcontracted for replacement labor with an outside firm.

On July 26, the union charged Behring with unfair labor practices and, after a hearing, an ALJ found against the company. The Board affirmed the findings of the ALJ, issued a cease and desist order and, in addition, directed reinstatement of the employees with back pay.

The ALJ found that the company violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1976), on several occasions before and shortly after the election.[1] In one instance, two employees, acting as agents for the company, convened a meeting of their fellow workers during business hours at the warehouse. The two employees told the workers that they would be better off without a union, and said that the company would subcontract their work or close the plant if the union were voted in. They also solicited a document requesting that the union petition be withdrawn.

After the meeting, the company established a grievance committee, an action which the ALJ categorized as a pre-election benefit. The company had already reclassified three receiving clerks to higher-paid positions in the week after the election petition was filed, and later granted an across-the-board pay raise at a point when objections to the election would still have been timely.

Another § 8(a)(1) violation was found to have occurred when the company diverted freight to a facility owned by a different firm in order to emphasize that work was slow and jobs were in jeopardy. The company also intimated that the employees might lose their stock option and profit-sharing plans, as well as their pension benefits, if the union won the election. Finally, three days before the election, a supervisor interrogated an employee to discover the names of the persons who had started the union's organizing effort and to learn how each of the employees would vote.

The ALJ also found that the eight discharges and the decision to subcontract violated § 8(a)(3) of the Act, 29 U.S.C. § 158(a)(3) (1976).[2] Behring had argued that its actions were prompted by a severe decline in business at the warehouse, and the ALJ agreed that "subcontracting the warehouse labor ultimately could be financially beneficial." Nevertheless, he concluded that "although the Respondent eventually could have reduced its costs by laying off most of its own warehouse employees and by subcontracting their work . . . , the Respondent was motivated, at least in part, in so doing at that time by a desire to reduce the possibility of another union election in the future."

With one minor exception, the Board affirmed the findings of the ALJ and adopted his recommendations, determining that the company's economic defense to the § 8(a)(3) charges "failed to rebut the General Counsel's *prima facie* case" of unlawfully motivated discharges. To support this conclusion, the Board referred to its ruling in *Wright Line, a Division of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980).

Behring raises three contentions on appeal. First, it claims that the § 8(a)(1) findings are not supported by substantial evidence and rest upon erroneous credibility determinations by the ALJ. Second, it asserts that it was denied a fair hearing because the ALJ revoked a subpoena *duces tecum* served on a Board agent who had investigated an earlier charge against the company. Third, it attacks the Board's *Wright Line* test for § 8(a)(3) violations as improperly shifting the burden of proof on the issue of the company's motive for discharging its employees and subcontracting its work.

We see no need to discuss the § 8(a)(1) violations at length. Behring strongly contests the findings of the ALJ and we might well have come to a different conclusion had we tried the case in the first instance. Our role, however, is limited to

---

1. Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." Section 7 of the Act, 29 U.S.C. § 157 (1976), provides in part: "Employees shall have the right to self-organization, to form, join or assist labor organizations . . . and to engage in other concerted activities for . . . other mutual aid or protection . . . ."

2. Section 8(a)(3) makes it an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

determining whether there is substantial evidence in the record as a whole to support the Board's findings of fact. 29 U.S.C. § 160(e) (1976). Similarly, credibility resolutions generally rest with the ALJ when he considers all the relevant factors in his explanation. *Edgewood Nursing Center, Inc. v. NLRB*, 581 F.2d 363, 365 (3d Cir. 1978). Since we cannot say that substantial evidence is lacking here, we must reject the company's challenges to the § 8(a)(1) findings.

As for the subpoena, Behring surmised that the testimony and notes of the Board agent would reveal admissions impeaching the credibility of the General Counsel's witnesses. The agent had secured statements from employees in the course of investigating an earlier charge that had been withdrawn for cause. At the hearing, however, the ALJ revoked the subpoena after the company was given access to the statements obtained from the witnesses. The Board upheld the ALJ's action because the information sought by Behring fell within the " 'limited evidentiary privilege which protects the informal investigatorial and trial-preparatory processes of regulatory agencies such as the NLRB,' *Stephens Produce Co., Inc. v. NLRB*, 515 F.2d 1373, 1376 (8th Cir. 1975)," and the company had not shown a substantial reason to disregard the privilege.

██ Behring contends that the subpoena should not have been quashed because the material it sought from the agent is available under the Freedom of Information Act. *But see, New England Medical Center Hospital v. NLRB*, 548 F.2d 377 (1st Cir. 1976). We need not address the provisions of the FOIA however, for the company never made a request for disclosure. Since Behring was furnished with the witnesses' prior statements and no prejudice resulted, we do not believe that the Board erred in finding that a limited evidentiary privilege justified the ALJ's action.

Of far greater concern to us is the Board's treatment of the lay-offs. An employer accused of discharging workers in violation of § 8(a)(3) may assert, as did Behring here, that it was motivated by legitimate business considerations rather than antiunion bias. When this occurs, the Supreme Court has said, "[i]t is the 'true purpose' or 'real motive' in hiring or firing that constitutes the test" whether the statute has been violated. *Local 357, International Brotherhood of Teamsters v. NLRB*, 365 U.S. 667, 675, 81 S.Ct. 835, 839, 6 L.Ed.2d 11 (1961). It is essential that the Board ascertain the true reason for the employer's action in these "dual motive" cases, since "[t]he Act does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them . . . and . . . the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than . . . intimidation and coercion." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45–46, 57 S.Ct. 615, 628, 81 L.Ed. 893 (1937).[3]

Despite this directive, for many years the Board took the position that a discharge violated § 8(a)(3) as long as it was motivated "in part" by antiunion animus. *See* cases collected in *Wright Line*, 251 N.L.R.B. at 1084. The Board's "in part" test received a mixed reception among the courts of appeals. The First Circuit rejected it, saying that "[t]he mere existence of antiunion animus is not enough" to establish that a discharge violated § 8(a)(3) when a legitimate business reason for the employer's action also existed. *NLRB v. Billen*

---

**3.** We recognize that there is a distinction between "pretext" and "dual motive" cases. In *Lippincott Industries, Inc. v. NLRB*, 661 F.2d 112, 114 (9th Cir. 1981), however, the court observed that "in terms of the proper legal standard to be applied, the difference between these two types of cases is of little importance." It explained: "In either instance, the employer has asserted justifiable, legitimate business reasons for the discharge. The difference is that in a pretext case the employer's reasons are discredited or otherwise rejected, leaving only the impermissible reason, while in a mixed motive case the relative causative force of the employer's reasons is compared against the impermissible reason to determine whether the latter is the moving cause behind the discharge." *Id.*

*Shoe Co.*, 397 F.2d 801, 803 (1st Cir. 1968). Instead, the court required the Board to show that the employer's "dominant" or actual motive was hostility towards the employee's union activity. *See NLRB v. Lowell Sun Publishing Co.*, 320 F.2d 835, 842 (1st Cir. 1963) (Aldrich, J., concurring). The rationale was that an employee who engaged in organizational activity should not be entitled to immunity if another worker similarly situated except for the union activism would be subject to discharge.

The Supreme Court confronted an analogous situation in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). There, a school board did not rehire a teacher after his contract expired, in part because it was offended by his exercise of First Amendment rights and in part because of other reasons. The Court decided that it was necessary to formulate "a test of causation which distinguishes between a result caused by a constitutional violation and one not so caused." *Id.* at 286, 97 S.Ct. at 575. Since the "constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the [protected] conduct," *id.* at 285–286, 97 S.Ct. at 575, the employer was free to show that it would have reached the same decision even in the absence of the teacher's First Amendment activity.

In *Wright Line*, 251 N.L.R.B. at 1087, the Board recognized that the Supreme Court's causal analysis in *Mt. Healthy* "represents a rejection of an 'in part' test which stops with the establishment of a *prima facie* case or at consideration of an improper motive." Even though *Mt. Healthy* was not an National Labor Relations Act case, the Board decided to adopt the Supreme Court's approach because it saw "the advantage of clearing the air by abandoning the 'in part' language in expressing our conclusion as to whether the Act was violated." *Id.* at 1089. Henceforth, the Board announced, it would employ a new causation test in all cases turning on employer motivation:

"First, we shall require that the General Counsel make a *prima facie* showing sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision. Once this is established, the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct."

*Id.* at 1089.

The *Wright Line* test has both substantive and procedural components. Substantively, it analyzes the connection between an employee's discharge and an employer's antiunion animus in terms of "but for" causation. To find a § 8(a)(3) violation, the Board must determine that the employee would not have been discharged but for his protected union activity. No violation exists if the employer would have made the same decision to discharge the employee in any event, absent the shielded conduct.

The Board's adoption of the "but for" test is a welcome development which should reduce the confusion in this controversial area of labor law. The "but for" test satisfies this court's requirement that the Board seek the "real motive" or "real cause" for an employee's discharge. *See, NLRB v. General Warehouse Corp.*, 643 F.2d 965, 972 (3d Cir. 1981). In *Edgewood Nursing Center, Inc. v. N.L.R.B.*, 581 F.2d 363, 368 (3d Cir. 1978), we said:

"[I]f the employee would have been fired for cause irrespective of the employer's attitude toward the union, the real reason for the discharge is nondiscriminatory. In that circumstance there is no causal connection of any anti-union bias and the loss of the job."

Or, as we put it in *Gould Incorporated v. NLRB*, 612 F.2d 728, 734 (3d Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980), "if it is found that the employee would have been disciplined for proper cause notwithstanding the employer's attitude toward the union, the discipline must be held to be nondiscriminatory, because in that case the causal relationship between the anti-union bias and the discipline would be insufficient to support a

conclusion that the discipline was administered 'because of' the protected activity. . . ."[4]

There are difficulties, however, with the procedural aspect of the *Wright Line* rule. As mentioned earlier, the Board first requires the General Counsel to make "a *prima facie* showing sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision." 251 N.L.R.B. at 1089. Once this is done, the burden shifts onto the employer to "demonstrate" that the same action would have taken place even in the absence of the protected conduct. *Id.* By "demonstrate," the Board means that the burden of persuasion shifts to the employer, not merely the burden of going forward with evidence to rebut the *prima facie* case. Consistent with this, the Board "views the employer's asserted justification as an affirmative defense." *Id.* at 1084 n.5, 1088 n.11.

The shifting burden of persuasion undermines the "but for" test and reintroduces the confusion which *Wright Line* purported to eliminate. To understand why, it is only necessary to realize that in establishing a *prima facie* case, the General Counsel need not prove that antiunion discrimination was the "real cause" of the employee's discharge. Instead, the *Wright Line* procedure only requires the General Counsel to show that antiunion animus was "a" motivating factor in the employer's decision. If the employer then proffers a legitimate reason for its action, but does not do so with enough weight to carry the burden of persuasion, the Board would rule that the § 8(a)(3) charge had been proved. This would be so despite the fact that two factors—neither outweighing the other—had been advanced as causes, and the Board never determined which was the real one. As such, the procedural aspect of the rule is plainly at odds with the "but for" test.

The Board relies on the Supreme Court's decision in *Mt. Healthy* to support its allocation of the burden of proof. The employer there was required to prove by a preponderance of the evidence that the same decision not to rehire an employee would have been reached even absent his constitutionally-protected activity. 429 U.S. at 287, 97 S.Ct. at 576. *Mt. Healthy* is inapposite in its burden-shifting phase, however, because the Board is bound by statutory limitations which foreclose the issue. The Act itself imposes the burden of proving an unfair labor practice on the General Counsel. Section 10(c) of the Act, 29 U.S.C. § 160(c)(1976), provides in part:

"If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint."

As interpreted by the Board's own regulations, this means that "[t]he Board's attorney has the burden of proof of violations of section 8 of the National Labor Relations Act." 29 C.F.R. § 101.10(b) (1981). Moreover, § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d) (1976), states that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." Since none of these statutory or regulatory provisions were applicable in *Mt. Healthy*, the Supreme Court was free to allocate the burden of proof. The Board, on the other hand, has no power to shift that burden onto the employer.

We believe that the more appropriate precedent is found in the line of recent Supreme Court decisions outlining the procedure to be followed in Title VII employment discrimination cases. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); and *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). In

---

**4.** In *Herman Bros., Inc. v. NLRB*, 658 F.2d 201 (3d Cir. 1981) the employer argued that Wright Line is inconsistent with *Edgewood Nursing Center, Inc. v. NLRB*, and *Gould Incorporated v. NLRB*. The court left the question open, however, saying "[w]e need not decide here whether Wright Line and Third Circuit law differ." 658 F.2d at 208.

those cases, the Court emphasized that the ultimate burden of proving discrimination rests upon the plaintiff; it never shifts to the defendant. If the plaintiff establishes a *prima facie* case, the defendant must articulate some legitimate, nondiscriminatory reason for its action. The Court stressed that this is only a burden of going forward, not of persuasion. Should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons.[5]

▇ Discrimination in employment because of race, religion, or nationality is often as subtle and as difficult to ferret out as that resulting from antiunion bias. The Supreme Court recognized the problems of proof in the *Burdine* line of cases, but concluded that only the burden of production, and not persuasion, shifts to the defendant. Since the same considerations are present where the discrimination is based on union activity, the Board should follow the *Burdine* procedure in those cases as well.

The *Wright Line* test was thoughtfully and thoroughly analyzed when it reached the United States Court of Appeals for the First Circuit. *NLRB v. Wright Line, a Division of Wright Line, Inc.,* 662 F.2d 899 (1st Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). As we do today, the court welcomed the adoption of "but for" causation and rejected the Board's attempt to shift the burden of proof onto the employer. The court also noted that the Board has mischaracterized the employer's burden of producing rebuttal evidence as an affirmative defense, which it in no way resembles. *Id.* at 905 n.9. We agree with the First Circuit, and believe that the Board failed to take into account the General Counsel's statutory burden to prove the unfair labor practice.

Before the First Circuit, as it does here, the Board relied on language in *NLRB v. Great Dane Trailers, Inc.,* 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967), to support its allocation of the burden of proof. In that case, the employer discriminated between strikers and nonstrikers with respect to vacation pay. The Supreme Court said:

"[O]nce it has been proved that the employer engaged in discriminatory conduct which could have adversely affected employee rights to *some* extent, the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him."

*Id.* at 34, 87 S.Ct. at 1798. The First Circuit distinguished *Great Dane* because it involved "a challenge to an overall policy of the employer rather than to a single discharge." 662 F.2d at 904 n.8. We think a similar distinction applies to the case at hand.

More importantly, *Great Dane* was not concerned with the difference between the burden of production and the burden of persuasion, and terms applicable to both are used somewhat interchangeably throughout the opinion. For example, in the sentence preceding the one quoted above, the Court said that "an antiunion motivation must be proved to sustain the charge *if* the employer has come forward with evidence of legitimate and substantial business justifications for the conduct." 388 U.S. at 34, 87 S.Ct. at 1798. The Court then held that an unfair labor practice was proved because "the company came forward with no evidence of legitimate motives for its discriminatory conduct.... The company simply did not meet the burden of proof...." *Id.* Notably lacking is the precision the Court later applied in *Burdine* when it addressed the

---

5. The *Burdine* opinion noted that the distinction between burden of proof and burden of production is a traditional feature of the common law. The Court said, "[i]n a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8. Since the employer presumably is most likely to be in possession of evidence showing the real reason for its action, it must produce that evidence to rebut plaintiff's *prima facie* showing of discrimination. Nevertheless, the ultimate burden of proof remains on the discriminatee. We found the reasoning in the *Burdine* line of cases to be persuasive and applied it in a Title VI context. *See, NAACP v. Medical Center, Inc.,* 657 F.2d 1322 (3d Cir. 1981).

specific issues of the burdens of production and persuasion. On the whole, then, we are convinced that *Great Dane* does not run counter to the result reached by the First Circuit and us.[6]

From a practical standpoint, it is unlikely that the decision in many cases will turn on whether the employer's burden is characterized as being one of persuasion or production. Nevertheless, as the Board recognized in *Wright Line*, 251 N.L.R.B. at 1087, "[t]his distinction is a crucial one since the decision as to who bears this burden can be determinative." We think that fewer errors will result if the distinction is properly observed.[7]

In summary, the Board's *Wright Line* test represents a substantial improvement over its prior practice and, except for its shifting burden of persuasion, meets with our approval. Under our formula, once the General Counsel has established a *prima facie* case of discriminatory discharge, the employer should rebut this with evidence of a legitimate business reason for its action. The ultimate burden of proof does not shift from the General Counsel and does not devolve upon the employer at any stage.

Therefore, no violation may be found unless the Board determines that the General Counsel has proved by a preponderance of the evidence that the employer's antiunion animus was the real cause of the discharge.

This case must be remanded for reconsideration because the burden of proof was misallocated. The Board held that Behring failed to substantiate its economic defense because it could not justify the timing of the discharges. The relevance of that observation is not clear from the Board's decision. The lay-offs occurred soon after the election and, therefore, could not have affected it.

Although the ALJ referred to testimony that the company was afraid the union would try for another election in the following year, the lay-offs could hardly have been further removed in time from that possible eventuality. Lay-offs were not limited to union activists and the Board did not find a suspicious pattern in the terminations. On the other hand, the company's evidence of shrinking revenues and mounting administrative costs was not simply

---

**6.** In *Wright Line*, the Board seized upon a few remarks in the legislative history of the 1947 amendment to § 10(c) of the Act to support shifting the burden of proof. 251 N.L.R.B. at 1088. The First Circuit found this legislative history to be inconclusive, 662 F.2d at 904 n.8, and we are inclined to agree. In any event, we think there is little need to consult the legislative history because the statute is clear on the General Counsel's burden of proof and the Board's regulation is a significant expression of agreement on that point.

**7.** Other courts of appeals that have reviewed the *Wright Line* test have reacted to it with general approval, but only the First Circuit has scrutinized the burden-shifting issue in depth. In the Fifth Circuit, *TRW, Inc. v. NLRB*, 654 F.2d 307 (5th Cir. 1981), is consistent with the First Circuit view. Two other cases, *NLRB v. Charles H. McCauley Associates, Inc.*, 657 F.2d 685 (5th Cir. 1981), and *NLRB v. Robin American Corp.*, 654 F.2d 1022 (5th Cir. 1981), merely recite the *Wright Line* test. In *Red Ball Motor Freight, Inc. v. NLRB*, 660 F.2d 626 (5th Cir. 1981), *petition for cert. filed*, 50 U.S.L.W. 3773 (U.S. Mar. 23, 1982) (No. 81–1605), an employer's challenge to the shifting burden of proof is rejected without analysis. In the Sixth Circuit, *Charge Card Association v. NLRB*, 653 F.2d 272 (6th Cir. 1981), held that the Board failed to prove its case under either the "dominant motive" test or the *Wright Line*

rule. In *NLRB v. Consolidated Freight Ways*, 651 F.2d 436 (6th Cir. 1981), the court also denied enforcement. In *NLRB v. Lloyd A. Fry Roofing Co.*, 651 F.2d 442 (6th Cir. 1981), the court recited the *Wright Line* test but did not analyze it.

·The Seventh Circuit said that it was adopting the *Wright Line* rule in *Peavey Co. v. NLRB*, 648 F.2d 460 (7th Cir. 1981). The court seemed concerned only with its substantive phase, however, and the Board's petition for enforcement was denied. The same result occurred in *NLRB v. Eldorado Manufacturing Corp.*, 660 F.2d 1207 (7th Cir. 1981).

In *NLRB v. Fixtures Manufacturing Corp.*, 669 F.2d 547 (8th Cir. 1982), the Eighth Circuit rejected the First Circuit's approach and approved the Board's burden-shifting rule as within the latitude it should have in structuring its fact-finding process. The court did not discuss the constraints placed on the Board by the burden of proof assigned to the General Counsel by the Act, the Administrative Procedure Act, and the Board's own regulations.

In· *NLRB v. Nevis Industries, Inc.*, 647 F.2d 905 (9th Cir. 1981), the Ninth Circuit approved *Wright Line's* procedural shift, but again without discussion of the General Counsel's statutory burden of proof. *See also, Doug Hartley, Inc. v. NLRB*, 669 F.2d 579 (9th Cir. 1982).

"poor mouthing," but was substantiated by the ALJ's own findings and subsequent events, including closing of the warehouse.

The Board's citation of *Electrical Products Division of Midland-Ross Corp. v. NLRB*, 617 F.2d 977 (3d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980), is not helpful. In that case, the timing of the employer's action was significant because it could have had an influence on a pending election. No such considerations are present here. Since Behring did articulate a legitimate business reason for the discharges, and the General Counsel did not prove that the company's real motive was antiunion animus, the case must be remanded to the Board for further proceedings consistent with this opinion.