HOTEL EMPLOYEES AND RESTAU-
RANT EMPLOYEES UNION, LOCAL
11, affiliated with the Hotel Employees
& Restaurant Employees International
Union, AFL–CIO, Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Rossmore House Hotel,
Respondent-Intervenor.

No. 84–7353.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1985.

Decided May 16, 1985.

Kennedy, Circuit Judge, concurred
with opinion.

Ellen Greenstone, Levy, Ansell & Gold-
man, Los Angeles, Cal., for petitioners.

Daniel R. Pollitt, N.L.R.B., Washington,
D.C., for N.L.R.B.

Michael Schmire, Schmire & Schmire,
Los Angeles, Cal., for Rossmore House Ho-
tel.

Before KENNEDY and ALARCON, Cir-
cuit Judges, and SOLOMON,* District
Judge.

SOLOMON, Judge:

Hotel Employees and Restaurant Em-
ployees Union, Local 11 (petitioners), peti-
tion to review the decision of the National

---

\* The Honorable Gus J. Solomon, Senior United
States District Judge for the District of Oregon,

sitting by designation.

Labor Relations Board (the Board) in *Rossmore House*, 269 N.L.R.B. No. 198, 116 L.R.R.M. 1025 (1984). Petitioners contend that the decision establishes a standard for evaluating the legality of employee interrogations that is inconsistent with the National Labor Relations Act (the Act). Petitioners also challenge the Board's ruling that the interrogations do not violate the Act. We affirm the Board's adoption of the standard and its application of the standard in this case.

### Facts

Warren Harvey worked as a cook and waiter for Rossmore House, a residential retirement hotel owned by Shyr-Jim Tsay and managed by Ronald Tvenstrup. In July, 1982, Harvey called union representatives and held an employee meeting in his home. The union sent a mailgram to Rossmore House which notified Rossmore House that Harvey and others had formed an organizing committee with the knowledge that their union activities were protected under the Act.

On August 1, 1982, when Tvenstrup received the mailgram, he walked into the kitchen and talked to Harvey. Harvey and Tvenstrup disagree on the content of their conversation. Tvenstrup testified that he asked Harvey, "Is this true?," that Harvey answered, "Yes," that Tvenstrup said, "Okay, thank you" and then walked away. Tvenstrup further testified that as he walked back to his office, Harvey stated, "I am sorry; it is nothing personal."

Harvey testified that Tvenstrup approached him with the mailgram in his hand and said, "What is this about a union?," and Harvey responded, "That's right about the union. We're going to have a union because of the lack of benefits, lack of insurance, lack of job security, vacations without pay." Harvey testified that Tvenstrup said the owners would fight the union, and that, as manager, Tvenstrup would have to fight it, too.

The second interrogation took place on August 7, 1982. According to Harvey's testimony, which the Administrative Law Judge (ALJ) credited, Tsay, the owner, approached Harvey as Harvey was leaving work. Tsay said, "The manager tells me you're trying to get a union in here," and asked why. Harvey said that low pay, lack of benefits, and lack of job security caused the union effort. Tsay then asked if the union charged a fee to join. When Harvey answered "Yes," Tsay said he would talk to Tvenstrup about the union.

Tvenstrup terminated Harvey's employment for reasons other than his union activities, and the propriety of Harvey's discharge is not an issue in this appeal.

### The ALJ's Decision

The ALJ found that both interrogations violated Section 8(a)(1) of the Act. This section provides:

 (a) It shall be an unfair labor practice for an employer—

 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

29 U.S.C. § 158(a)(1).

The ALJ relied on decisions in which the Board held that probing of union views may be coercive even when addressed to employees who have openly declared their pro-union sympathies.

The ALJ did not determine which version of the conversation between Harvey and Tvenstrup was credible. The ALJ found that Tvenstrup's inquiry was unlawful under either version.

### The Board's Reversal

The Board reversed because of both interrogations. First, the Board reviewed its own case law and the case law of this circuit and noted that until 1954, the Board applied a per se standard to employee interrogations. Under the per se standard, questions concerning union sympathies are inherently coercive and violate section 8(a)(1) even if the employee openly expresses pro-union views.

In 1954, the Board in *Blue Flash Express*, 109 N.L.R.B. 591, 592 (1954), an-

nounced the rule that employee interrogation is unlawful only where *"under all the circumstances* the interrogation reasonably tends to restrain or interfere with the employees in the exercise of rights guaranteed by the Act." This court has often upheld this standard. *See NLRB v. Brooks Camera,* 691 F.2d 912, 919 (9th Cir.1982); *Lippincott Industries v. NLRB,* 661 F.2d 112, 114 (9th Cir.1981); *Penasquitos Village, Inc. v. NLRB,* 565 F.2d 1074, 1080 (9th Cir.1977).

The Board followed the all-the-circumstances standard until the late 1970's when, without overruling *Blue Flash Express,* the Board returned to the per se standard:

[A]n interrogation of an employee's union sympathies or his reasons for supporting a union need not be uttered in the context of threats or promises in order to be coercive. The probing of such views, even addressed to employees who have openly declared their prounion sympathies, reasonably tends to interfere with the free exercise of employee rights under the Act, and consequently, is coercive.

*Paceco, a Division of Fruehauf Corp.,* 237 N.L.R.B. 399, 399–400 (1978), *vacated in part and remanded in part,* 601 F.2d 180 (5th Cir.1979), *supp. dec.,* 247 N.L.R.B. 1405 (1980).

In *PPG Industries,* 251 N.L.R.B. 1146, 1147 (1980), the Board held that employer questioning constitutes coercive behavior even when addressed to known union sympathizers and even in the absence of threats to retaliate or promises to change working conditions. The Board expressly overruled other cases to the extent that they hold that open union sympathizers may lawfully be questioned about their union views if they are not threatened or given promises.

In this case, the Board announced that it would no longer follow *PPG Industries:*

We conclude that *PPG* improperly established a per se rule that completely disregarded the circumstances surrounding an alleged interrogation and ignored the reality of the workplace. Such a per se

approach had been rejected by the Board 30 years ago when it set forth the basic test for evaluating whether interrogations violate the Act: whether under all of the circumstances the interrogation reasonably tends to restrain, coerce, or interfere with rights guaranteed by the Act.

*Rossmore House,* 116 L.R.R.M. at 1026 (footnotes omitted).

The Board noted that casual questioning about union views is expected in the workplace and is not necessarily coercive.

The Board, using the all-the-circumstances standard, found both interrogations of Harvey to be noncoercive in view of Harvey's open support for the union.

Petitioners assert that the *Rossmore House* decision establishes a new per se rule under which employer questioning of open union supporters in the absence of threats or promises is lawful. They also assert that the *Rossmore House* standard is inconsistent with the Act and that the interrogations of Harvey were unlawful regardless of the standard used.

### Discussion

 This court reviews Board standards for rationality and consistency with the Act. *NLRB v. Nevis Industries, Inc.,* 647 F.2d 905, 909 (9th Cir.1981). *See also Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). The Board may alter its standards provided that the new standards are rational and consistent with the Act. *Nevis Industries,* 647 F.2d at 909.

The *Rossmore House* decision does conflict with a few Ninth Circuit cases which held that employee interrogations are unlawful absent express assurances against reprisal. *J.M. Tanaka Construction, Inc. v. NLRB,* 675 F.2d 1029, 1037 (9th Cir. 1982); *NLRB v. Fort Vancouver Plywood Co.,* 604 F.2d 596, 599 n. 1 (9th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980); *NLRB v. Super Toys, Inc.,* 458 F.2d 180, 182 (9th Cir.1972). But, even in *Tanaka,* which espoused a per

se rule, the court looked to the surrounding circumstances before finding that the interrogation was coercive. *Tanaka,* 675 F.2d at 1037. A large body of case law upholds the all-the-circumstances test. *See, e.g., NLRB v. Brooks Camera, supra,* 691 F.2d at 919; *Lippincott Industries v. NLRB, supra,* 661 F.2d at 114; *Penasquitos Village, Inc. v. NLRB,* 565 F.2d at 1080; *NLRB v. Silver Spur Casino,* 623 F.2d 571, 584 (9th Cir.1980), *cert. denied,* 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981).

■ We conclude that the Board acted within its province in returning to the flexible all-the-circumstances test which recognizes that an employer's questioning of an employee's union views is not necessarily coercive and may arise during casual conversation. Employers often mingle with their employees, and union activities are a natural topic of conversation. A standard which considers the totality of the circumstances surrounding an employee interrogation is a realistic approach to the enforcement of section 8(a)(1). It is a standard that is consistent with the Act because the Board and the administrative law judges can determine, on a case-by-case basis, whether all the facts demonstrate coercive behavior.

■ We further conclude that the Board correctly applied the all-the-circumstances test to the facts of this case. Under either Tvenstrup's or Harvey's version of their conversation, Tvenstrup's inquiry was not coercive. Harvey openly declared his support for the union, and under the circumstances, Tvenstrup's and Tsay's questioning was not unlawful.

AFFIRMED.

KENNEDY, Circuit Judge, concurring:

I am pleased to concur in Judge Solomon's cogent opinion. Candor requires recognition, though, that our holding is not consistent with a broad statement in one of our recent precedents. In *Financial Institution Employees of America, Local 1182 v. NLRB,* the court stated "[i]t is irrational to discard an effective procedure ..." even when the Board has determined that a new rule is preferable. 752 F.2d 356, 366–67 (9th Cir.1984). *See also Machinists Local 1327 v. NLRB,* 725 F.2d 1212, 1218 (9th Cir.1984). In my view, both the holding and the quoted statement in *Financial Institution Employees* were wrong; but the court declined to take the case en banc. *See Financial Institution Employees of America, Local No. 1182 v. NLRB,* 750 F.2d 757, 757–58 (9th Cir.1985) (dissents from failure to take en banc). Confronted with the quoted statement in the context of the case now before us, we must either apply it and reverse the Board, or announce it was a dictum unnecessary to the decision in *Financial Institution Employees.* I adopt the latter course, though it is not a very good way to run the circuit. I see no alternative, however, if the court declines to take en banc those case which are both wrong and overwritten.