66 F.3d 336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Wilbert D. SONNIER, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
McDonnell Douglas Corporation, Intervenor.
 No. 93-70557.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1995.*
Decided Sept. 13, 1995.
 
 1
 Before: FARRIS and O'SCANNLAIN, Circuit Judges, and TASHIMA, District Judge.**
 
 
 2
 MEMORANDUM***
 
 STATEMENT OF THE CASE
 
 3
 McDonnell Douglas Corporation ("McDonnell Douglas") hired Wilbert D. Sonnier in 1985 as an aircraft mechanic at its facility in Long Beach, California. Sonnier was employed in this capacity until discharged on August 25, 1989.
 
 
 4
 McDonnell Douglas entered into a collective bargaining agreement ("CBA") with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and its Local 148 (collectively "Union"), which covered employees at its Long Beach facility. Sonnier actively participated in the Union and became a shop steward in the Summer of 1988. In December, 1988, Sonnier became involved with the UP Caucus, a group formed to oppose the cooperative approach to labor relations between McDonnell Douglas and the Union.
 
 
 5
 On March 30, 1989, after failing to report to a required team meeting, Sonnier was suspended. Union officials persuaded management to preserve Sonnier's job under a probationary "last chance agreement" ("agreement"). On April 17, 1989, Sonnier signed the agreement.
 
 
 6
 The agreement required Sonnier to obtain a signed Union Activity Pass ("Pass") before conducting any Union business during the following six months and subjected him to immediate termination upon any subsequent violation of McDonnell Douglas' rules.
 
 
 7
 On August 21, 1989, Sonnier was observed in an area not authorized under the terms of his Pass. Three days later, the Human Resource Branch Manager concluded that Sonnier had violated the conditions of his Pass and suspended him; Sonnier was fired the next day.
 
 
 8
 Sonnier filed a grievance with the Union. Believing that the grievance lacked merit, the Union withdrew Sonnier's complaint on October 4, 1989. Sonnier successfully appealed the withdrawal, but McDonnell Douglas declined the Union's request to revive the complaint. Thereafter, Sonnier filed charges of unfair labor practice with the National Labor Relations Board ("NLRB").
 
 
 9
 After a hearing, the Administrative Law Judge ("ALJ") decided on September 18, 1991, that Sonnier's claims lacked merit and that neither McDonnell Douglas nor the Union had violated the Labor Management Relations Act, 29 U.S.C. Sec. 141 et seq. ("LMRA"). The NLRB adopted the ALJ's decision on May 15, 1992. The NLRB held: (1) McDonnell Douglas did not breach its collective bargaining agreement with the Union; and (2) the Union did not breach its duty of fair representation to Sonnier.
 
 
 10
 Sonnier, now petitions this Court to review the NLRB's decision.
 
 STANDARD OF REVIEW
 
 11
 We must uphold the decision "if the NLRB's findings of fact are supported by substantial evidence." NLRB v. O'Neill, 965 F.2d 1522, 1526 (9th Cir.1992), cert. denied, 113 S.Ct. 2995 (1993). Further, the ALJ's credibility determinations are "entitled to special deference and may only be rejected when a clear preponderance of the evidence shows they are incorrect." Lippincott Indus., Inc. v. NLRB, 661 F.2d 112, 114 (9th Cir.1981).
 
 DISCUSSION
 I. Breach of the CBA
 
 12
 The ALJ held that McDonnell Douglas did not breach the CBA by terminating Sonnier. The ALJ specifically found: 1) Sonnier's undenied failure to return to work constituted legitimate grounds for discharge; and 2) no evidence showed that Sonnier's termination was influenced by his Union activities.
 
 
 13
 The ALJ carefully scrutinized Sonnier's contention that certain McDonnell Douglas officials displayed anti-union animus towards him because of his opposition to certain labor policies and held that this contention was not supported by credible evidence. Although Sonnier alleged several incidents of threats by McDonnell Douglas officials, the ALJ did not find any of Sonnier's evidence or testimony credible because of numerous inconsistencies and strong contrary evidence.
 
 
 14
 Because the ALJ heard all of the evidence firsthand, the ALJ "is in the best position to evaluate which witness is recalling the facts most accurately." NLRB v. Anchorage Times Publishing Co., 637 F.2d 1359, 1364 (9th Cir.1981). To overturn these credibility determinations, Sonnier would need to prove that they were "inherently incredible or patently unreasonable." NLRB v. Anthony Co., 557 F.2d 692, 695 (9th Cir.1977). The ALJ's finding that Sonnier was discharged solely because he violated the "last chance agreement," rather than because of anti-union animus, was supported by substantial evidence and was neither inherently incredible nor patently unreasonable.
 
 
 15
 After careful review, the NLRB adopted the findings of the ALJ. The NLRB affirmed the central finding that McDonnell Douglas' decision to terminate Sonnier was supported by good cause and was not motivated by anti-union animus. The NLRB specifically found that Sonnier's contention that his union activities were a factor in his discharge lacked merit. Because Sonnier failed to prove that the NLRB's decision was unreasonable, the decision must be affirmed.
 
 
 16
 II. Breach of the Duty of Fair Representation
 
 
 17
 A union violates the LMRA if it fails to represent an employee fairly, impartially and in good faith. This duty of fair representation assures employees of the right to be free from unfair or invidious treatment by their bargaining agent. Price v. Southern Pacific Transp. Co., 586 F.2d 750, 754 (9th Cir.1978). The burden of demonstrating a union's breach of the duty of fair representation involves more than demonstrating negligence or mere errors in judgment. Hines v. Anchor Motor Freight, 424 U.S. 554, 570-71 (1986). An LMRA violation requires a showing of deliberate bad faith or unintentional conduct that falls so far short of minimum standards of fairness and legitimate union interests as to be arbitrary. Price, 586 F.2d at 754.
 
 
 18
 To satisfy its duty, a union must minimally investigate grievances brought to its attention. Tenorio v. NLRB, 680 F.2d 598, 601 (9th Cir.1982) (en banc). Further, the thoroughness with which unions must investigate grievances to satisfy this duty varies with the circumstances of each case. Id.
 
 
 19
 The NLRB found that, given Sonnier's already tenuous employment situation as shown by his probation under the agreement, and the subsequent violation thereof, legitimate grounds existed for his termination. The NLRB concluded that the Union made a reasonable decision, given the circumstances of the case, in determining the best way to proceed. These findings were supported by substantial evidence and, therefore, are affirmed.
 
 
 20
 The petition for review is DENIED.
 
 
 
 *
 The panel unanimously finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4(c)
 
 
 **
 Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3