EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

HALLS MOTOR TRANSIT COMPANY and General Teamsters Chauffeurs, Warehousemen and Helpers Local Union 261, Defendants.

Civ. A. No. 83–1758.

United States District Court,
W.D. Pennsylvania.

May 29, 1985.

John L. Lokos, E.E.O.C., Philadelphia, Pa., for plaintiff.

Bernard D. Marcus, Stephanie Spaulding, Pittsburgh, Pa., for defendants.

## OPINION

COHILL, District Judge.

This matter is presently before us on Defendant's motion for summary judgment. The Plaintiff, Equal Employment Opportunity Commission ("EEOC") brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976), alleging discriminatory treatment on account of race by Defendant Hall's Motor Transit Co. ("Hall's") against its former employee, Burke O. Smith. The EEOC joined Local Union No. 261 of the General Teamsters, Chauffeurs, Warehousemen, and Helpers as an interested party pursuant to Fed.R.Civ.P. 19(a)(2). The parties have entered into a stipulation of certain facts for purposes of this motion. Because we find that there are no genuine issues of material fact, and because we believe Defendant is entitled to judgment as a matter of law, we will grant Defendant Hall's motion for summary judgment.

*Facts*

Defendant Hall's is a common carrier of freight by truck and provides pick-up and delivery services of general and special commodities in the eastern portion of the United States. (Stip. at 1). Hall's operates a number of trucking terminals within its system, including one in West Middlesex, Pennsylvania. *Id.* Burke Smith, the individual on whose behalf the EEOC has brought this action, was a road driver operating out of the West Middlesex terminal, and was terminated on January 27, 1982 for failure to report an accident. *Id.* at 2.

Hall's and Teamsters Local Union No. 261 (the "Union"), Smith's collective bargaining representative, were parties to the National Master Freight Agreement and Teamsters Joint Council No. 40 Supplemental Agreement ("NMFA") from the period of April, 1979 through March 31, 1982. *Id.* Article 16, section 3 of the NMFA provides, in part, that "Any employee involved in any accident shall immediately report said accident." *Id.* at 3. Article 47 of the NMFA provides that failure to report an accident is grounds for discharge. *Id.*

Hall's distributed to all drivers a manual stating, under the heading "Instructions to Drivers in the Event of an Accident," that drivers, after obtaining certain necessary information after an accident, must immediately call Hall's Central Dispatch, located at the Mechanicsburg, Pa. office. *Id.* Smith was aware of the requirement that he was to report any accident "as soon as it happened" and had followed the procedures described in the drivers' manual after other accidents in which he had been involved. *Id.*

The parties have stipulated that Smith had an accident on November 24, 1981, but failed to report the accident to the company on that date, although he spoke on the telephone with both Central Dispatch and the West Middlesex Terminal. *Id.* Smith did not file an accident report when he stopped at Hall's Wheeling West Virginia terminal on November 24, 1981, nor did he file a report on November 25, 1981 when he stopped at the West Middlesex terminal. *Id.* November 25 and 26 were holidays under Article 52 of the NMFA. *Id.* at 3–4. Burke Smith was off the seniority board from 11:00 November 27, 1981 through January 27, 1982. *Id.* at 4.

Smith entered the hospital on November 27, 1981 and remained in the hospital for approximately ten days. Smith Dep. at 70–71.

Hall's first learned of the accident when a customer in West Virginia telephoned the Company in January, 1982, to report that one of Hall's drivers had damaged a car of one of its employees in November, 1981.

Stip. at 2. The customer advised Hall's that, at the time of the accident, Hall's employee had stated that he would report the accident; the customer informed Hall's that no payment for damages had yet been received. *Id.*

When Hall's Terminal Manager, Leslie Lenhart, received the unit number of the truck involved in the accident, he checked with Hall's Safety Department to check if an accident involving that unit had been reported. (Lenhart Dep. at 61). After being told that the Safety Department had no such report, and after checking Smith's files to see if they contained a report of the accident, Lenhart sent Smith a mailgram on January 27, 1982, informing him of his termination for failure to report an accident. *Id.* A letter sent by Lenhart to Smith on February 1, 1982 confirmed the termination. The letter also stated, "Subsequent to that mailgram you called me and did confirm verbally that you, in fact, did have an accident in Terra Alta, West Virginia on November 24, 1981, at the Clem Teets Oil Company." Defendants' Memorandum in Support of Motion for Summary Judgment, Ex. B.

Pursuant to the NMFA Agreement, Article 46, § 1, employees who are disciplined or discharged are entitled to grieve their discipline to a grievance committee. Stip. at 4. Under the Agreement, the employee reports the grievance to the shop steward or Committeeman in writing. These officials attempt to adjust the grievance within 48 hours. If the matter is not resolved, the Union then files the grievance with the Western Pennsylvania Teamsters and Employers Joint Area Committee ("JAC"). *See* NMFA, Art. 46, § 1(a)–(c). The JAC is composed of an impartial panel of six persons, consisting of equal numbers of "employer" and "union" representatives. No representative of the employer or the union involved in the grievance is permitted to be a member of the JAC panel hearing the grievance of one of its employees or members. "Employer" representatives, for example, are terminal managers or labor relations representatives from employers other than the employer involved in the grievance.

Section 1(c) of Article 46 provides, in part, that "Where the Joint Area Committee, by a majority vote, settles a dispute, no appeal may be taken. *Such a decision will be final and binding on both parties with no further appeal.* Id., Art. 46, § 1(c) (emphasis added). Further appeal is only permitted in cases where the Western Pennsylvania JAC is deadlocked. *Id.* § 1(d).

When the grievance was not resolved informally, the Union filed a complaint with the JAC, on Mr. Smith's behalf, alleging that Mr. Smith's discharge was unfair and too severe a penalty. Stip. at 5. Mr. Smith was represented at the hearing by James Lundy, Business Agent for the Union, and Lewis Caccia, the union steward. Mr. Smith was given the opportunity to present testimony and to make additional arguments himself. *Id.* Mr. Smith did not allege, and no argument was made before the JAC that Hall's had discriminated against him on the basis of race. Smith Dep., at 99.

The decision of the JAC, issued on February 10, 1982, states that "Based on the facts presented, the Company had just cause for discharge. The claim of the Union is denied." Defendant's Memorandum in Support of Motion for Summary Judgment, Ex. E.

After the JAC decision, Smith filed separate charges with the EEOC charging both the Union and Hall's with racial discrimination. While the EEOC complaint joined the Union as an interested party pursuant to Fed.R.Civ.P. 19(a)(2), the EEOC pretrial statement states, "The EEOC made a determination that the union did not discriminate against Smith because of his race/black with regards (sic) to his termination." Plaintiff's Pretrial Statement, at 6.

*The Present Action*

The Complaint in this case alleges that Since July 2, 1965, and continuously up until the present time, the Defendant

Company has intentially (sic) engaged in discriminatóry employment practices based upon race-black, in violation of Section 730(a) of Title VII. Said unlawful employment practices include but are not limited to the discharge of Burke O. Smith because of his race/black.

The effect of the practices, policies, and systems complained of in Paragraph 7 have been to deprive Burke O. Smith herein involved of equal employment opportunities and to otherwise adversely affect his status as employee because of his race in violation of Title VII.

Complaint, ¶¶ 8, 9.

*Positions of the Parties*

The EEOC, in issuing a determination of reasonable cause to believe racial discrimination had occurred, states, in part,

The Charging Party alleged that Respondent discriminated against him because of his race, black by discharging him and subsequently denying him reinstatement. Examination of the evidence shows the following facts which indicate that there is reasonable cause to believe that the allegation as stated by the Charging Party is true:

the evidence presented clearly shows that whites guilty of the same work rule violation as the Charging Party, were reinstated to employment while the Charging Party was not. Even though a grievance committee made the decision not to reinstate the Charging Party, when one examines the make up of that committee and its purposes, then the company is considered a liable party to decisions rendered by that committee. The company should not blindly follow the recommendation of the company, (sic) especially since the disparity was brought to its attention.

EEOC Determination, Defendants' Memorandum, Ex. F–1.

The EEOC, in its "Determination on Reconsideration," states in part,

The Charging Party alleged that Respondent discriminated against him because of his race, black by discharging him and subsequently denying him reinstatement. The previous determination is hereby withdrawn and reconsidered. A re-examination of the evidence shows the following facts which indicate that there is reasonable cause to believe that the allegation is true:

It is undisputed in the record that the Charging Party was discharged and not reinstated after failure to report an accident.

White employees similarly situated were treated more favorably than the Charging Party in that they were reinstated after being discharged for failure to report accidents.

Two white employees were reinstated by the Respondent after consultation with the union. One white employee was reinstated by the Respondent on recommendation by the grievence (sic) committee. The Charging Party's rule violation was no more serious than that of the white employees who were reinstated relardless (sic) of the procedures followed for reinstating them.

Defendants' Memorandum, Ex. M–1.

Defendant, in moving for summary judgment, argues that it is undisputed that Hall's immediately discharged all employees who failed to report accidents, and, thus, there is no indication that black and white employees received different discipline. In support of its motion, Hall's has submitted mailgram terminations and/or follow-up letters of discharge with respect to six employees who failed to report accidents. *See* Defendants' Memorandum, Ex. G–2, G–3 (Richard Smith); Ex. H (Edward Baum); Ex. I (Lawrence Milly); Ex. J–1, J–4 (Clair Fike); Ex. K–1, K–3 (Charles Gearhart); Ex. L (Francis Simendinger). The stipulation entered into by the parties for purposes of this motion also includes a seventh employee, David Lindquist, who was discharged on two occasions, once for having a hit-and-run accident, and once for having a preventable accident. Stip. at 6. Neither of these discharges, however, appears to be based on failure to report an accident.

Hall's also argues that while the JAC ordered reinstatement of some employees discharged by Hall's, such decisions are binding on Hall's under the terms of the collective bargaining agreement.

*Summary Judgment*

Rule 56 provides, in part, that summary judgment shall be granted only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

When considering a motion for summary judgment the court must determine if there are material facts in dispute and must view the facts in the light most favorable to the nonmoving party. *Goclowski v. Penn Central Transp. Co.*, 571 F.2d 747, 751 (3d Cir.1977). The moving party has the burden of establishing that no genuine issue of fact exists, *Butz v. Hertz Corp.*, 554 F.Supp. 1178, 1181 (W.D.Pa.1983), and any doubts as to the existence of genuine issues of fact are to be resolved against the moving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981).

■ Under Fed.R.Civ.P. 56(e), however, a party opposing a summary judgment motion may not rest upon the mere allegations of denials of his pleadings. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). In opposing the motion, the response must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*The Employment Decision*

Our analysis necessarily begins with an examination of the employment decision at issue in this case. Defendant argues that the employment decision was the notice of discharge sent to Mr. Smith on January 27, 1982.

We find Plaintiff's argument to be somewhat elusive. The EEOC asserts that the decision to terminate Mr. Smith on January 27, 1982 was discriminatory and that its subsequent actions in failing to reinstate Mr. Smith 1) before the JAC hearing, and 2) after the JAC hearing, were discriminatory. *See* Plaintiff's Brief, at 12.

We believe the relevant employment decision is Mr. Smith's termination notice of January 27, 1984. *See Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam); *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). In *Ricks,* the Supreme Court held that the initial denial of tenure was the appropriate discriminatory act, not the eventual termination which flowed from the denial. 449 U.S. at 258, 101 S.Ct. at 504. In so holding, the Supreme Court rejected the theory that the employer college discriminated both in the denial of tenure *and* the termination of employment. *Id.* at 257, 101 S.Ct. at 503.

■ Following *Ricks,* we believe that progress through an established grievance procedure, negotiated for and established by a collective bargaining process, does not, in and of itself, result in "new" acts of discrimination. As the Supreme Court observed in *Ricks,* for this theory to hold, the Plaintiff would have had to allege that "the manner in which his employment was terminated differed discriminatorily from the manner in which the college terminated other professors who also had been denied tenure." *Id.* at 258, 101 S.Ct. at 504. The Court found that Plaintiff had not alleged any such facts.

In the case presently before us, we believe Plaintiff makes a similar argument in asserting that disparate treatment occurred after the notice of discharge. Plaintiff does not allege any difference in the manner in which the grievance procedures were conducted, only a difference in result, by the fact that other grievances were settled through negotiation short of a hearing before the JAC. We find that Plaintiff has alleged no facts to support a theory that the grievance procedures following Mr.

858

Smith's termination were handled any differently from those following terminations of white drivers. *Compare Sharpe v. Philadelphia Housing Authority*, 693 F.2d 24, 27 (3d Cir.1982) (complaint properly alleged violation of Title VII where reinstatement conditioned on waiving back pay and agreement that there would be no determination on original appeal regarding demotion; such allegation challenges manner in which appeals of demotion and discharge are treated). As the Supreme Court noted in *Ricks*, "[the College's] entertaining a grievance complaining of the tenure decision does not suggest that the earlier decision was in any respect tentative. The grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to influence that decision before it is made...." *Ricks*, 449 U.S. at 261, 101 S.Ct. at 505–06 (emphasis in original).

Similarly, we find that the JAC decision was not, as the EEOC argues, a "recommendation" which the Company could accept or reject. This argument posits that every step along the grievance route constitutes another "employment decision." We reject such an argument.

*Applicable Law*

"The central focus in a [Title VII disparate treatment] case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex or national origin.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977)).

■ In Title VII cases, the plaintiff must initially establish a prima facie case. The burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment decision. This burden is one of production, not persuasion. If the defendant's evidence raises a genuine issue of fact, the presumption created by the plaintiff's prima facie case drops from the case. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–

54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The plaintiff is then given the opportunity to prove, by a preponderance of the evidence, that the defendant's stated reasons are pretextual or incredible. *Dillon v. Coles*, 746 F.2d 998, 1003 (3d Cir. 1984).

■ The elements of a prima facie case in Title VII actions are set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This standard has been adapted to various employment situations, including cases of discriminatory discharge. The generally-accepted test for a prima facie case of discriminatory discharge is: 1) the plaintiff is a member of a protected class; 2) he was qualified for the job from which he was discharged; 3) he was satisfying the normal requirements of the job; and 4) he was the object of adverse action. *See McClain v. Mack Trucks, Inc.*, 532 F.Supp. 486, 489 (E.D.Pa. 1982), *aff'd*, 707 F.2d 1393 (3d Cir.), *cert. denied*, 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983); *McCann v. Delaware River Port Auth.*, 548 F.Supp. 1206, 1214 (E.D.Pa.1982) (citing *Whack v. Peabody & Wind Eng. Co.*, 452 F.Supp. 1369, 1371 (E.D.Pa.1978), *aff'd per curiam*, 595 F.2d 190 (3d Cir.1979)), *aff'd*, 725 F.2d 669 (3d Cir.1983). *Cf. Hagans v. Budd Co.*, 598 F.Supp. 89, 94 (E.D.Pa.1984) (prima facie case of discriminatory discharge made out where 1) plaintiff is member of protected class; 2) plaintiff was object of adverse action; and 3) such adverse action occurred because of race). *See also Nix v. WLCY Radio/RA Hall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984) (prima facie case of discriminatory discharge made out where 1) plaintiff is a member of protected class; 2) plaintiff was qualified for job; and 3) misconduct for which plaintiff was fired was nearly identical to that engaged in by employee outside protected class who employer retained) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir.1982)). The Supreme Court noted in *McDonnell Douglas* that facts vary in Title VII cases and the specification

of proof for some prima facie cases is not necessarily applicable to all. 411 U.S. at 802, 93 S.Ct. at 1824. We believe Plaintiff has made out a prima facie case of discriminatory discharge in this case where 1) Mr. Smith is black; 2) he was qualified to be a truck driver, having driven for the company for approximately six years; 3) he was terminated; and 4) testimony was presented that Plaintiff's supervisor, who terminated him, had made racially-biased remarks. *See* discussion of evidence of racial animus, *infra.*

*Discussion*

As earlier summarized, Defendant's motion for summary judgment is based on two grounds: 1) that failure to report an accident was a legitimate, nondiscriminatory reason for the discharge; and 2) that Defendant has terminated all employees who failed to report an accident.

In opposition to Defendant's motion, Plaintiff has set forth 19 "facts," which, it argues, present a genuine issue for trial. Plaintiff's assertions which merit discussion are 1) two white employees, Baum and Milley, were reinstated after termination but prior to the JAC hearing; 2) a white driver, Don McEven, failed to report an accident but did not receive a notice of discharge; 3) instances of racial animus on the part of Mr. Lenhart; 4) a white driver, David Lindquist, did not receive a notice of termination following an accident; and 5) certain statistical arguments. We will consider these contentions in turn, focusing specifically on whether they create a material issue of fact as to pretext in light of the appropriate burdens of proof. As one court has observed, "[c]learly, *McDonnell Douglas* was not intended to erase Rule 56 from Title VII actions." *McClain v. Mack Trucks, Inc.,* 532 F.Supp. 486, 490 (E.D.Pa. 1982).

■ In order to withstand summary judgment, Plaintiff must produce evidence sufficient to demonstrate the existence of an issue material to its burden of proving intentional discrimination. This may be done either directly, by persuading the Court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. The plaintiff's burden is to show that "but for" racial animus, she or he would not have been fired. *See Lewis v. University of Pittsburgh,* 725 F.2d 910, 917 (3d Cir. 1983). In other words, plaintiff's evidence must create a genuine issue concerning the legitimacy or justification of the dismissal. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 (3d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). A fact is material if its determination could affect the outcome of a case. *Keller v. Bluemle,* 571 F.Supp. 364, 367 (E.D.Pa.1983), *aff'd,* 735 F.2d 1349 (3d Cir. 1984).

*A. Reinstatement of White Drivers*

■ Plaintiff asserts that certain white drivers, Baum, Milley, and McEven were reinstated to their jobs after they received notices of discharge but prior to the JAC hearing. Plaintiff's Brief, at 9. We previously held that, in the absence of allegations that the conduct of the grievance procedures was somehow different, a difference in result does not create a material issue with regard to this case. Both Baum and Milley were reinstated in the course of the grievance procedures.

■ Mr. Lenhart testified that one Don McEven was terminated for failure to report an accident. Lenhart Dep., at 28–29. The fact that he still works for the company, standing alone, does not create a material issue of fact.

Plaintiff also argues that one David Lindquist, a white employee, did not receive a notice of discharge after he had an unreported accident. Plaintiff's Brief, at 9 (citing Lenhart Dep., at 67). Plaintiff states that "this was acceptable to the company because the white driver was injured." *Id.* Lindquist's truck went over an embankment, rendering Lindquist unconscious; the company knew of the acci-

dent because of its seriousness. *See* Lenhart Dep., at 67. There was no issue of whether Lindquist should have, but did not, report the accident. We do not view the situations as comparable. In addition, Plaintiff does not identify which Lindquist accident it refers to. The stipulation entered into by both parties states that David Lindquist was discharged on September 17, 1981 for having a hit and run accident on the same date. Stip. ¶ 39. The stipulation also states that David Lindquist was discharged on May 10, 1982 after it was determined that an accident he had on November 14, 1981 was preventable. *Id.* Neither of these discharges was for failure to report an accident.

## B. *Statistical Data*

The Complaint in this action alludes to various unspecified discriminatory employment practices; specific facts, however, relate only to Plaintiff's charge of discriminatory discharge. Complaint, ¶ 8. The prayer for relief is similarly vague, requesting injunctive relief preventing "any employment practice which discriminates because of race," ¶ A; affirmative injunctive relief to "eradicate the effects of the Company's present unlawful employment practices," ¶ B; and appropriate compensatory relief, ¶ C.

In opposing Defendant's Motion, Plaintiff offers certain "statistical evidence": that 1) during the "relevant time period of alleged discriminatory acts", of 240 employees at the West Middlesex facility, 3 were black. Plaintiff's Brief, at 10. Plaintiff further avers that "qualified blacks applied for vacancies at West Middlesex and were not hired during this period." *Id.* Plaintiff asserts that

> Thus the West Middlesex facility had only 1.2% blacks in its workforce. The 1980 census shows that if the Sharon, Pa., geographic area, is used as the available labor pool, Halls under utilized blacks, since 7% of those employed in this area within this category, were black. If Youngstown, Ohio is used, which is within ten miles of West Middle-

sex and is a larger workforce pool, 7.8% of those employed in trucking are black. Smith the complainant lives in the Youngstown area. Based on those with experience only, *six times as many blacks* would have to be employed by Hall's before the composition of its workforce would reflect the available pool. *Id.* at 11 (emphasis in original).

Plaintiff argues that, based on these facts and on certain charts and maps submitted as exhibits, it has shown, by the use of statistical data, as well as other evidence, that Hall's has engaged in a pattern or practice of discrimination against blacks. Plaintiff concludes, therefore, that it is entitled to a presumption that Smith's notice of discharge was based on impermissible considerations, and that the burden shifts to the employer to establish that Mr. Smith would not have been discharged absent discrimination. *Id.*

Defendant disagrees with both the facts and conclusions presented by the EEOC and objects to the admissibility of Plaintiff's exhibits 1 and 8.

■ The Supreme Court has held that statistics may be relevant in a disparate treatment case, especially at the pretext stage. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668, 679 (1973). While statistics as to the racial composition of a defendant's labor force may be reflective of discriminatory or exclusionary practices, such general determinations may not, in and of themselves, be controlling in cases challenging individual hiring decisions, particularly in the presence of otherwise justifiable reasons for the employment decision. *See Taylor v. Secretary of the Army,* 583 F.Supp. 1503, 1508 (D.Md.1984) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805 n. 19, 93 S.Ct. 1817, 1826 n. 19, 36 L.Ed.2d 668 (1973)).

■ Plaintiff's exhibit 8 to its brief, consisting of various unidentified maps and 1980 "census" data figures from the "Program services division, OPR" is not adequately identified. The documents which

make up this exhibit, as submitted, would be inadmissible at trial, and, thus, cannot be considered in support of Plaintiff's argument. *See Daley v. St. Agnes Hospital, Inc.,* 490 F.Supp. 1309, 1315 (E.D.Pa.1980) (Becker, J.) The conclusory statements in Plaintiff's brief, which rely on the unidentified exhibits, refer to the "relevant geographic area," "workforce pool," "underutiliz[ation] [of] blacks," and "qualified blacks." Brief, at 10–11. These statements, inadequately supported, are even less helpful.

Finally, even if exhibit 8 were properly presented, we disagree that Plaintiff would have established, on this record, a "pattern or practice" of discrimination, nor do we believe Plaintiff would be entitled to a presumption that Mr. Smith's discharge was based on impermissible considerations. A "pattern or practice" of discrimination simply means a generalized version of disparate treatment. *Goodman v. Lukens Steel Co.,* 580 F.Supp. 1114, 1121 (E.D.Pa.1984). Even if we assume that Plaintiff had offered admissible statistical evidence, we do not agree that this would serve to shift the burden of proof in an individual disparate treatment case. In this regard, we agree with the reasoning of the Court in *Taylor v. Secretary of the Army,* 583 F.Supp. 1503 (D.Md.1984). We believe the *Taylor* court properly distinguished the case of *Franks v. Bowman,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), which Plaintiff also relies on, as involving situations of a class action, in the case of *Franks,* and of a suit by the Government, in the case of *Teamsters.* In both cases, the actions challenged a variety of company policies affecting numerous employees. In distinguishing *Franks* and *Teamsters,* the court in *Taylor* noted that the analysis of these cases, allowing for a shifting in the burden of proof, has never been employed in an individual action challenging an allegedly discriminatory discharge. 583 F.Supp. at 1509.

For the above reasons, we do not believe that the statistical evidence presented by Plaintiff is admissible, nor does it create a genuine dispute as to a material fact sufficient to defeat a motion for summary judgment.

## C. *Instances of Racial Animus*

We come to what we believe to be the most difficult issue before us: whether, when a Defendant articulates a legitimate reason for a challenged action, and where the court finds no evidence of disparate treatment between white and black employees with respect to discharges by the employer, evidence of racial animus on the part of the supervisor responsible for the termination in question creates a genuine issue of fact as to pretext sufficient to preclude entry of summary judgment.

In considering this question, we return to the standard in this circuit that a plaintiff must prove that race was a "but for" reason for the challenged action. *Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 (3d Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984). While the Third Circuit has not dealt explicitly with the question of a "mixed motive" discharge in a Title VII case, we believe that the standard adopted in *Lewis* mandates the entry of summary judgment. In so holding, we observe that a motion for summary judgment is not defeated because an issue of fact exists; the factual dispute must be material to the resolution of the dispute. *EEOC v. Westinghouse Electric Corp.,* 725 F.2d 211, 218 (3d Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). A fact is material if its determination can affect the outcome of the case. *McCann v. Delaware River Port Auth.,* 548 F.Supp. 1206, 1211 (E.D.Pa.1982) (citing *Burke v. Leader Dogs for the Blind,* 516 F.Supp. 1374, 1375 (E.D.Pa.1981) ).

Plaintiff states that Les Lenhart, plaintiff's supervisor, told a racial joke in front of Melvin Bowe, another black employee, which caused a complaint to be filed with the NAACP and an apology given to Bowe. Plaintiff's Brief in Opposition to

Summary Judgment, at 5, (citing Lenhart Deposition, at 81). Plaintiff also states that Lenhart harassed Andrew Brown, another black employee, who, in turn, filed a charge of race discrimination with the EEOC. *Id.* at 5. While Plaintiff refers to a conciliation agreement between Hall's and the EEOC, such an agreement is not part of the record, and insofar as Mr. Lenhart's deposition states that he heard of an agreement between Hall's and the EEOC, such testimony is clearly hearsay. See Ex. 5–5A to Plaintiff's Brief (Lenhart Deposition, at 79–80). Plaintiff also refers to an instance where Lenhart called Smith a "nigger," but supplies no reference to the record in this case. Mr. Smith testified in his deposition to an altercation which took place between Mr. Lenhart and Mr. Smith at Mr. Smith's unemployment compensation hearing, which was allegedly provoked by Mr. Lenhart calling Mr. Smith a "nigger." *See* Smith Dep., at 175–76. *See also* Lenhart Dep., at 97–103.

All three instances are offered as evidence of racial animus on the part of Mr. Lenhart. The last example occurred subsequent to Mr. Smith's discharge, and was the only example involving Mr. Smith.

Taking all inferences in Plaintiff's favor, we will assume that these instances establish that Mr. Lenhart was racially biased.

In *Behring Int'l, Inc. v. NLRB,* 675 F.2d 83 (3d Cir.1982), the Court of Appeals considered the situation of a "mixed motive" discharge, challenged under the National Labor Relations Act, ("NLRA"), 29 U.S.C. § 158(a)(3). Specifically, the Court considered whether the National Labor Relations Board ("the Board") acted properly in shifting the burden of persuasion to the employer to demonstrate that the same action would have been taken in the absence of the protected conduct. The Court, relying on cases construing Title VII, held that this procedural scheme violated the "but for" standard set forth for such cases in *Wright Line, a Division of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980). 675 F.2d at 87–90.

In *Behring,* the Court stated,

We recognize that there is a distinction between "pretext" and "dual motive" cases. In *Lippincott Industries, Inc. v. NLRB,* 661 F.2d 112, 114 (9th Cir.1981), however, the court observed that "in terms of the proper legal standard to be applied, the difference between these two types of cases is of little importance." It explained: "In either instance, the employer has asserted justifiable, legitimate business reasons for the discharge. The difference is that in a pretext case the employer's reasons are discredited or otherwise rejected, leaving only the impermissible reason, while in a mixed motive case, the relative causative force of the employer's reasons is compared against the impermissible reason to determine whether the latter is the moving cause behind the discharge." *Id.*

675 F.2d at 86 n. 3.

In so holding, the Court observed that the Board must determine that the employee would not have been discharged but for the protected union activity. "No violation exists if the employer would have made the same decision to discharge the employee in any event, absent the shielded conduct." *Id.* at 87. The Court noted, " 'if it is found that the employee would have been disciplined for proper cause notwithstanding the employer's attitude toward the union, the discipline must be held to be nondiscriminatory, because in that case the causal relationship between the anti-union bias and the discipline would be insufficient to support a conclusion that the discipline was administered "because of" the protected activity....' " *Id.* at 87–88 (quoting *Gould, Inc. v. NLRB,* 612 F.2d 728, 734 (3d Cir. 1979), *cert. denied,* 449 U.S. 890, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980) ).

We believe that the Third Circuit, consistent with *Lewis v. University of Pittsburgh, supra* and *Behring,* would adopt the same "but for" test in the case of a mixed motive discharge under Title VII. *But see Bibbs v. Block,* 749 F.2d 508, 512 (8th Cir.1984), *reh'g en banc granted* March 8, 1985, (in mixed motive case, Plaintiff need only show racial reasons "more

likely than not" influenced employment decision to satisfy "but for" requirement of *McDonnell Douglas*).

Applying this reasoning, we find that where Plaintiff had an accident, failed to report it, was discharged for failure to report the accident, and the evidence does not show any comparable instances where the Company did not discharge white drivers who failed to report accidents, instances of racial animus on the part of Mr. Lenhart do not raise a genuine issue as to pretext.

*Conclusion*

For the reasons stated above, we will grant Defendant Hall's Motion for Summary Judgment. Since Plaintiff took the position in its Pretrial statement that it did not find any discriminatory conduct on the part of the union, and since we do not believe that any such facts are alleged, we will also enter judgment in favor of the union in this case.