**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Appellant,**

v.

**HALL'S MOTOR TRANSIT COMPANY and General Teamsters Chauffeurs, Warehousemen and Helpers Local Union 261.**

No. 85–3499.

United States Court of Appeals, Third Circuit.

Argued April 17, 1986.

Decided May 1, 1986.

Note, *Multistate Plaintiff Class Actions: Jurisdiction and Certification*, 92 Harv.L.Rev. 718, 742 (1979).

Johnny J. Butler, General Counsel (Acting), Gwendolyn Young Reams, Associate General Counsel (Acting), Vincent Blackwood, Asst. Gen. Counsel, Susan Elizabeth Rees (argued), Attorney, E.E.O.C., Washington, D.C., for appellant.

Francis M. Milone (argued), Steven R. Wall, (Morgan, Lewis & Bockius, of Counsel), Philadelphia, Pa., for appellee.

Before ADAMS, GIBBONS and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The issue in this case is whether an employer's decision not to reinstate a discharged employee in the course of a grievance procedure may be challenged as racially discriminatory under Title VII. The district court, 609 F.Supp. 862 (D.C.Pa. 1985), held as a matter of law that a Title VII claim may not be based upon disparate results of a grievance procedure, but rather a plaintiff under that statute may challenge the denial of his grievance only on the ground that the grievance was handled in a different "manner" than were the grievances of other employees. Finding that appellant had alleged no such disparate handling of his grievance, the district court granted summary judgment for defendant. Because the employee presented sufficient evidence of racial bias in his employer's decision not to reinstate him to withstand a motion for summary judgment, and because the district court considered the evidence under an incorrect legal standard, we will vacate the grant of summary judgment and remand for further proceedings.

### I.

Appellant Burke Smith, who is black, was a truck driver for defendant Hall's Motor Company until he was discharged in January 1982 for failing to report a minor accident. It is conceded that Smith's discharge was authorized by Article 47 of the National Master Freight Agreement and Teamsters Joint Council No. 40 Supplemental Agreement (NMFA).

Upon receiving notice of his discharge, Smith filed a grievance challenging the discharge. Under the grievance procedure established by the NMFA, a union representative first attempts to adjust the grievance

informally by meeting with the disciplined employee and a representative of the company. If the grievance is not resolved informally to the employee's satisfaction, the union may file a grievance with the Western Pennsylvania Teamsters and Employers Joint Area Committee (JAC). The employer against whom the grievance was filed is not directly represented on the panel of the JAC that decides the grievance. If a majority of the JAC reaches a decision, that decision is final and binding on both parties. However, if the JAC deadlocks, the matter is referred to the Eastern Conference Joint Area Committee for settlement.

Smith's grievance followed the usual route. First, an attempt was made to resolve his grievance informally at a meeting between Lester Lenhart, the Hall's supervisor who had discharged Smith, two union representatives, and Smith. Lenhart, however, refused to reinstate Smith, and the union thereafter filed a grievance on Smith's behalf with the JAC. The JAC, in an opinion issued on February 10, 1982, declared that, "[b]ased on the facts presented, the company had just cause for discharge." It therefore denied the grievance.

Following the JAC decision, Smith filed charges against Hall's with the Equal Employment Opportunity Commission (EEOC), alleging that both Hall's and the union had engaged in racial discrimination. The EEOC determined that there was reasonable cause to believe that Hall's had discriminated against Smith because of his race both in discharging him and in refusing to reinstate him. It therefore filed this suit under Title VII, 42 U.S.C. § 2000e et seq. (1982), in federal district court. Although the EEOC determined that the union had not engaged in racial discrimination against Smith, the union was nonetheless joined as an interested party under Fed.R. Civ.P. 19(a)(2).

After some discovery had taken place, Hall's moved for summary judgment. The district court granted the motion, concluding that no Title VII claim could be based

upon the denial of Smith's grievance and that the EEOC had failed to produce sufficient evidence that Smith's discharge was tainted by racial discrimination. On this appeal, the EEOC has abandoned its claim that Smith's discharge was the result of racial discrimination. It also no longer contends, as it did in the district court, that Hall's can be held responsible under Title VII for any racial bias affecting the JAC's decision upholding Smith's discharge. Thus, the narrow issue presented here is whether the EEOC presented sufficient evidence to withstand a summary judgment on its claim that, in refusing to reinstate Smith at the informal-adjustment level of the grievance procedure, Hall's was motivated by racial discrimination.

## II.

### A.

As an initial matter, Hall's contends that this proceeding must be stayed because Hall's filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code on March 10, 1986. It argues that, pursuant to 11 U.S.C. § 362(a) (1982 & West Supp. 1986), the filing of the bankruptcy petition acts as an automatic stay of this suit under Title VII.

However, § 362(b)(4) provides that "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's policy or regulatory power" shall be exempt from the automatic stay provision. The Court of Appeals for the Eighth Circuit recently held in *EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir.1986), that a Title VII action brought by the EEOC to enforce that agency's power to eradicate employment discrimination is exempt from the automatic stay provision under § 362(b)(4). *See also Ahrens Aircraft, Inc. v. NLRB*, 703 F.2d 23, 24 (1st Cir.1983) (§ 362(a) does not preclude judicial enforcement of an NLRB backpay order); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir.1981) (per curiam) (a court-ordered reinstatement sought by the NLRB is not

stayed by § 362(a)); *NLRB v. FDI, Inc.,* 611 F.2d 1248, 1250–51 (9th Cir.1979) (NLRB proceedings are not subject to an automatic stay). We agree with the Eighth Circuit that proceedings brought by the EEOC fall within the exception to the automatic stay defined by § 362(b)(4). Accordingly, we must determine whether the district court erred in granting summary judgment for Hall's.

### B.

■ The district court observed that the EEOC had not alleged that Hall's processed Smith's grievance in a different manner than the grievances of white employees. Rather, the district court stated, the discrimination claim was based solely on a difference between the outcome of Smith's grievance and the outcome of certain white employees' grievances. Specifically, the EEOC claimed that a number of white truck drivers discharged for failure to report accidents had been reinstated by Hall's at the informal-adjustment level of the grievance procedure, whereas no such reinstatement was granted to Smith. The district court concluded that allegations of differences in the results of grievance proceedings did not state a claim under Title VII. It based this conclusion largely on its reading of *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

In *Ricks,* the Supreme Court held that the Title VII limitations period began to run when a college professor was denied tenure rather than when his requests for reconsideration of that decision were denied or when his employment contract expired at the end of the following academic year. In so holding, the Court stated that in his complaint, Ricks had not alleged that discriminatory acts had occurred after he was denied tenure, either in the consideration of his grievance of the tenure denial decision or in his eventual discharge. The Court observed that the record indicated that *all* professors who were denied tenure were thereafter terminated, and that there was thus no suggestion that the *decision*

to terminate Ricks after he was denied tenure was discriminatory. Consequently, the Court declared, "In order for the limitations period to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the college terminated other professors who also had been denied tenure." *Id.* at 258, 101 S.Ct. at 504 (emphasis added). Because "the only alleged discrimination occurred ... at the time the tenure decision was made and communicated to Ricks," the Court concluded that the filing limitations period began to run at that time. *Id.*

The district court apparently believed that the emphasized language quoted above was intended to indicate that Ricks could not have made out a Title VII claim by showing that only black professors who were denied tenure were subsequently terminated, while white professors who failed to receive tenure were retained by the college. Plainly, this was not the Court's intent. We find no support in *Ricks* for the conclusion that a racially-motivated decision to deny reinstatement is consistent with Title VII so long as the employee's grievance was processed in the usual manner.

Similarly, to the extent that the district court found underpinning for its result in *Sharpe v. Philadelphia Housing Authority,* 693 F.2d 24 (3d Cir.1982), we disagree with its interpretation of that case. In *Sharpe,* a housing police officer alleged that he had been demoted and eventually terminated because of his age, and that when he appealed the demotion, he was offered reinstatement as a low-level patrolman on the condition that he waive all claims to back pay. By contrast, he declared, appeals of similar demotion decisions by younger officers had resulted in their being promoted to ranks higher than those from which they were demoted. He thus contended that both the decisions to demote and discharge him, and the settlement terms offered him on appeal were influenced by age discrimination. The

Court held that the claim based on disparate treatment in the appeals process did state a claim under the Age Discrimination in Employment Act and that that portion of Sharpe's case was not time-barred. The district court and Hall's characterize Sharpe's claim as an allegation that his appeal was "handled differently" than the appeals of younger police officers. However, Sharpe contended not that he had been denied an appeal nor that his appeal was not processed through the usual procedure, but that it was resolved on less favorable terms than those of younger employees. Smith asserts a similar disparity of result here. *Sharpe* thus supports Smith's Title VII claim rather than the district court's conclusion.

Finally, Hall's maintains that grievance procedures should be insulated from scrutiny under Title VII because such scrutiny would undermine the federal labor policy of encouraging the informal adjustment of grievances through arbitration. Hall's states that "the contractual grievance procedure outlined in the National Master Freight Agreement is designed to foster individual consideration of grievances, and has the natural effect of encouraging differential results in the grievance procedure, based on compromise and on the application of general rules to individual circumstances." Brief for Appellee at 16–17. Presumably, Hall's means to argue that, if a decision to discharge an employee is in accordance with the governing collective bargaining agreement and is not based on race, a subsequent decision in the course of a grievance procedure upholding the discharge can never be discriminatory because it is merely a determination that the original discharge was not a violation of the collective bargaining agreement.

This argument, however, assumes that the only factor influencing the outcome of a given grievance is whether the challenged employment action was permissible under the collective bargaining agreement. Title VII was enacted because of Congress's conviction that many employment actions are not based entirely on legitimate grounds, but are tainted by consideration of factors such as race. Just as an employer's decision to discharge an employee may superficially appear to be justified by legitimate business reasons and yet have been motivated by racial prejudice, so may an employer's decisions to deal more leniently with some disciplined employees than with others during its grievance procedure be affected by illegitimate consideration of race or gender. Thus, if the EEOC produced evidence that white employees who were discharged for failing to report accidents were thereafter reinstated while Smith and other black employees were denied reinstatement, it made out a prima facie case under Title VII.

C.

■ In the district court, the EEOC produced evidence that at least two white truckdrivers discharged by Hall's for failure to report accidents were informally reinstated. Further, there was evidence that the accidents that these employees failed to report were serious and caused extensive damage. By contrast, Smith's accident was quite minor, involving the breakage of a foglight on a parked truck and causing only $50 damage. Additionally, the EEOC introduced a considerable quantity of evidence regarding both Lenhart's reputation for being biased against blacks and specific incidents of racial hostility on his part.

To withstand a motion for summary judgment in the context present here, the EEOC was required to produce sufficient evidence from which a factfinder could rationally infer that Smith's race was a determinative factor in the decision not to reinstate him at the informal-adjustment level of the grievance procedure. It could carry this burden by producing either direct evidence of discriminatory intent or evidence from which an inference of discrimination can be drawn. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See generally Dillon v. Coles*, 746 F.2d 998 (3d Cir.1984). In our view, the EEOC met this burden.

Consequently, summary judgment was improperly entered for Hall's.

### III.

The order of the district court granting summary judgment for Hall's will be vacated and the matter remanded for further proceedings consistent with this opinion. Costs will be taxed against appellee.