Appeal transferred.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Petitioner,

v.

Clark R. INGRAM, George M. Ingram, Gary C. Ingram, and Gregory B. Ingram, and Henry L. Israel and Betty Ann Taylor, Personal Representatives of the Estate of Herman J. Israel, Respondents.

Commonwealth Court of Pennsylvania.

Argued Jan. 25, 1995.

Filed March 2, 1995.

Publication Ordered May 15, 1995.

---

1. With the exception, not applicable here, of those cases within the exclusive jurisdiction of the Supreme Court.

Dennis A. Whitaker, for petitioner.

Roger H. Taft, for respondent.

KELLER, Senior Judge.

Before the Court is a petition entitled "Suggestion of Bankruptcy" filed by respondents Clark R. Ingram, George M. Ingram, Gary C. Ingram and Gregory B. Ingram (collectively, the Ingrams) and the Department of Environmental Resources' (DER) answer thereto. By order dated January 4, 1994, this Court notified the parties that the

"Suggestion of Bankruptcy" would be treated as a motion for a stay and ordered briefs addressing the issue of the effect of Section 362 of the Bankruptcy Code, 11 U.S.C. Section 362. During argument via telephone conference call on January 25, 1995, the issue of this Court's jurisdiction to review the applicability of the suggestion of bankruptcy was raised. Further briefs addressing this issue were ordered on or before February 13, 1995. After reviewing those briefs and the applicable statutory and caselaw, we conclude that this Court possesses concurrent jurisdiction to address the issues relating to a stay and that the Ingrams must comply with the Administrative Order of August 30, 1988, as affirmed by this Court in *Ingram v. Department of Environmental Resources,* 141 Pa.Commonwealth Ct. 324, 595 A.2d 733 (1991), *petition for allowance of appeal denied,* 530 Pa. 648, 607 A.2d 257 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 329, 121 L.Ed.2d 248 (1992).

## BACKGROUND

The history of this litigation dates back to DER's issuance of an amended Compliance Order on August 30, 1988, directing the individual respondents in this case as well as a corporate respondent, Rockwood Energy and Mineral Corporation (REMCorp) to abate violations of §§ 5, 316, 402 and 610 of the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§ 691.5, 691.316, 691.401 and 691.610; §§ 4.2 and 4.3 of the Surface Mining Act, Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.4b and 1396.4c; and § 1917–A of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 510–17. All of the violations involved discharges from a mine site in Clearfield County referred to as the "Frenchville site."

The Ingrams and Israel filed timely appeals to the Environmental Hearing Board (EHB) from DER's order. On April 17, 1990, the EHB issued an opinion and order granting DER's Motion for Partial Summary Judgement and dismissing the appeal of the Ingrams and Israel [1] On May 18, 1990, DER

1. Herman J. Israel died on September 30, 1989 and the personal representatives of his estate

filed a Petition to Enforce Administrative Order with this Court, which was docketed at No. 196 M.D.1990. The Ingrams and the Israel Estate filed Petitions for Review of the April 17, 1990 EHB opinion and order, which were docketed at Nos. 1075 and 1091 C.D.1990, respectively. Ultimately, the Opinion and Order of the EHB was affirmed by an unanimous panel of this Court on July 19, 1991 and the Petition to Enforce was dismissed as moot. *Ingram v. DER.*

The present action was commenced by DER on August 28, 1991 as a Petition to Enforce the August 30, 1988 order of DER and this Court's July 19, 1991 order. On December 30, 1994, the Ingrams filed the "Suggestion of Bankruptcy" which is currently at issue.

## JURISDICTION

The Ingrams argue that this Court has no jurisdiction to determine whether a Section 362 automatic stay applies. DER counters that this Court has such jurisdiction and has exercised it in the past, citing *Department of Environmental Resources v. Peggs Run Coal Co.*, 55 Pa.Commonwealth Ct. 312, 423 A.2d 765 (1980), which DER argues is on "all fours" with the present case. In *Peggs Run,* this Court indeed concluded that Section 362 of the Bankruptcy Code did not automatically stay action in this Court because the action was brought to enforce the Department's regulatory powers. It would appear, however, the precise jurisdictional issue presently before the Court was not raised in *Peggs Run.*

This jurisdictional question has, however, been raised and decided in the federal context. In *Brock v. Morysville Body Works,* 829 F.2d 383 (3d Cir.1987), the Secretary of Labor petitioned the United States Court of Appeals for the Third Circuit for summary enforcement of a final order of the Occupational Safety and Health Review Commission pursuant to 29 U.S.C. § 660. That section grants the courts of appeals exclusive jurisdiction over such matters. Morysville, however, had filed for reorganization under Chapter 11 of the Bankruptcy Code prior to

were substituted as parties in the EHB order of

the institution of the petition to enforce. The Third Circuit concluded that both the appellate court and the bankruptcy court had concurrent original jurisdiction over the petition to enforce, and that no purpose would be served by the Third Circuit deferring to the bankruptcy court. *Id.* at 385–387.

The Third Circuit also considered whether it had jurisdiction to determine the applicability of the automatic stay and determined that it had, citing for support a number of cases from the Second, Third, Fifth and Sixth Circuit Courts of Appeals. *Id.* at 387, citing *In re Baldwin–United Corporation Litigation,* 765 F.2d 343 (2d Cir.1985); *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934 (6th Cir.1986); *Hunt v. Bankers Trust Co.,* 799 F.2d 1060 (5th Cir.1986); *EEOC v. Hall's Motor Transport Co.,* 789 F.2d 1011 (3d Cir.1986).

While these cases all involve other *federal* courts, the same conclusion can be applied to cases pending in state courts. As the Third Circuit stated in Morysville, "The court in which the litigation claimed to be stayed is pending thus 'has jurisdiction to determine not only its own jurisdiction but also the more precise question of whether the proceeding pending before it is subject to the automatic stay.'" *Id.* at 387 (quoting *Baldwin–United,* 765 F.2d at 347). One bankruptcy court has specifically recognized that a state court has at least concurrent jurisdiction with the bankruptcy court to consider the applicability of the automatic stay. *In re Mann,* 88 BR 427 (Bankr.S.D.Fla.1988). In *Mann,* an individual who had filed for Chapter 11 bankruptcy protection requested the bankruptcy court to

> Enter an order enforcing automatic stay specifically with regard to contempt proceedings against the Petitioner case No. 85–13816(21) of the Family Division of the 11th Judicial Circuit in and for Dade County, Florida....

*In re Mann* at 429.

Chief Judge Thomas Britton noted that the circumstances of the case involved a state court order to pay $1,500 of delinquent alimony or child support or go to jail. *Id.* In

April 17, 1990.

discussing jurisdiction to determine the applicability of the automatic stay, Judge Britton stated that "[m]ovant has already placed that issue before [the state trial court judge], *who has at least concurrent jurisdiction with this court to consider the applicability of the stay.*" *Id.* at 430.

■ Accordingly, we conclude that this court has concurrent jurisdiction with the bankruptcy court to consider the applicability of the § 362 automatic stay.

## APPLICABILITY OF THE AUTOMATIC STAY

■ Having determined that this Court has jurisdiction to consider the applicability of the automatic stay, We must now decide whether the stay applies to the instant proceedings. § 362(a)(1–8) of the Bankruptcy Code, 11 U.S.C. § 362(a)(1–8), provides for an automatic stay of eight enumerated types of actions against a debtor. These enumerated types of actions include the commencement or continuation of a judicial, administrative or other action or proceeding against the debtor to recover a claim against the debtor that arose before the commencement of the bankruptcy, § 362(a)(1) and the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under the Bankruptcy Code, § 362(a)(2).

Section 362(b), however, sets forth specific exceptions to the automatic stay. As to actions stayed under § 362(a)(1), § 362(b)(4) provides that the filing of a petition in bankruptcy does not operate as a stay as to the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power. As to actions stayed under § 362(a)(2), § 362(b)(5) provides that the filing does not operate to stay the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such government unit's police or regulatory powers.

The Ingrams rely heavily on *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) for the proposition that what DER seeks in this case is essentially a money judgment against them, and is therefore not exempted from the automatic stay under the above-cited provisions. In *Kovacs,* the bankrupt was subject to an order by the State of Ohio to clean up a hazardous waste disposal site. The Supreme Court concluded that such an order was a "claim" against the bankrupt and therefore dischargeable in bankruptcy. A close reading of *Kovacs,* however, reveals that the case is factually distinguishable from the matter now before this Court.

Key to an understanding of *Kovacs* is the fact that the state had utilized its authority to place the property into receivership prior to the institution of the bankruptcy proceedings. Because the property was no longer in the possession of the bankrupt, Justice White noted that "there is no suggestion by [Ohio] that defendant can render performance under the affirmative obligation other than by payment of money." *Id.* at 708, 105 S.Ct. at 708–09 (quoting *In re Kovacs,* 29 B.R. 816, 818 (Bankr.S.D.Ohio 1982)). The Supreme Court opinion further highlights this aspect of the case by stating that

> Ohio does not suggest that Kovacs is capable of personally cleaning up the environmental damage he may have caused.... In reality, the only type performance in which Ohio is now interested is a money payment to effectuate the ... cleanup.... Kovacs cannot personally clean up the waste he wrongfully released into Ohio waters. He cannot perform the affirmative obligations imposed upon him by the State court except by paying money or transferring over his own financial resources. The State of Ohio has acknowledged this by its steadfast pursuit of payment as an alternative to personal performance.

*Id.* (quoting *In re Kovacs,* 717 F.2d 984 (6th Cir.1983)).

The Supreme Court found that, in the circumstances of the case before it, the cleanup duty had been reduced to a monetary obligation, and therefore not included under the § 362(b) exceptions to the automatic stay. According to Justice White,

We do not disturb this judgment. The injunction surely obliged Kovacs to clean up the site. But when he failed to do so, rather than prosecute Kovacs under the environmental laws or bring civil or criminal contempt proceedings, the State secured the appointment of a receiver, who was ordered to take possession of all of Kovacs' nonexempt assets as well as the assets of the corporate defendants and to comply with the injunction entered against Kovacs. As wise as this course may have been, it dispossessed Kovacs, removed his authority over the site, and divested him of assets that might have been used by him to clean up the property. Furthermore, when the bankruptcy trustee sought to recover Kovacs' assets from the receiver, the latter sought an injunction against such action.

*Id.* at 283, 105 S.Ct. at 709, 710.

In concluding that the cleanup order in *Kovacs* had been converted into an obligation to pay money, and hence dischargeable in bankruptcy, the Supreme Court discussed *Penn Terra, Ltd. v. Department of Environmental Resources,* 733 F.2d 267 (3d Cir. 1984), a case on which DER now relies. In distinguishing the two cases, Justice White noted that in *Penn Terra,* "there had been no appointment of a receiver who had the duty to comply with the state law and who was seeking money from the bankrupt." *Id.* at 283, n. 11, 105 S.Ct. at 710, n. 11. Finally, Justice White emphasized what was *not* being decided in *Kovacs,* stating that

[W]e do not suggest that Kovacs' discharge will shield him from prosecution for having violated the environmental laws of Ohio or from criminal prosecution for not performing his obligations under the injunction prior to bankruptcy. Second, had a fine or monetary penalty for violation of state law been imposed on Kovacs prior to bankruptcy, § 523(a)(7) forecloses any suggestion that his obligations would be discharged in bankruptcy. *Third, we do not address what the legal consequences would have been had Kovacs taken bankruptcy before a receiver had been appointed and a*

*trustee had been designated with the usual duties of a bankruptcy trustee....*

*Id.* at 284, 105 S.Ct. at 710 (emphasis added).

It is Justice White's third point which is before this Court in the present case. The order which DER seeks to enforce is a cleanup order that does not seek money damages. Rather, it seeks to have the Ingrams perform their lawful duty in treating mine waste discharges into the waters of the Commonwealth. Unlike *Kovacs,* the Ingrams have *not* been dispossessed of their property by a receiver, the cleanup order has *not* been reduced to a money judgment, and the Ingrams, or the trustee in bankruptcy *are* capable of taking actions to comply with the DER order. Justice White, in fact, appears to anticipate such a situation in a case such as this where a trustee in bankruptcy has been appointed.

Had no receiver been appointed prior to Kovacs' bankruptcy, the trustee would have been charged with the duty of collecting Kovacs' nonexempt property and administering it. If the site at issue were Kovacs' property, the trustee would shortly determine whether it was of value to the estate. If the property was worth more than the costs of bringing it into compliance, the trustee would undoubtedly sell it for its net value, and the buyer would clean up the property, in which event whatever obligation Kovacs might have had to clean up the property would have been satisfied. If the property were worth less than the cost of cleanup, the trustee would likely abandon it to its prior owner, who would then have to comply with the state environmental law to the extent of his ability.

*Id.* at 284, n. 12, 105 S.Ct. at 710-11, n. 12.

In sum, what is sought by DER in the present matter is compliance, not the payment of monetary damages, thus distinguishing this case from *Kovacs.* That distinction, we believe, is persuasively set forth by the Third Circuit in *Re: Torwico Electronics, Inc. v. State of New Jersey, Department of Environmental Protection,* 8 F.3d 146 (3d Cir.1993), which held that "the state can exercise its regulatory powers and force compliance with its law, even if the debtor must expend money to comply. Under *Kovacs,*

what the state cannot do is force the debtor to pay money to the state; at that point, it is acting as a creditor." *Id.* at 150.

Because DER does not seek payment of money to the state in this case, we conclude that § 362(b)(4) and (5) of the Bankruptcy Code apply here and that the automatic stay is inapplicable to this case.

### ORDER

AND NOW, this 2nd day of March, 1995, Respondents' Suggestion of Bankruptcy in the nature of a Motion for Stay is hereby DENIED.